## IN THE SUPREME COURT OF MISSISSIPPI
## NO. 95-CT-01288 SCT

*JESSIE SPANN*


*v.*


*WAL-MART STORES, INC. AND NATIONAL UNION*
*FIRE INSURANCE COMPANY OF PITTSBURG, PA*
### ON PETITION FOR WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 9/20/95 |
| TRIAL JUDGE: | HON. ROBERT GOZA |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | LEON MILLER |
| ATTORNEY FOR APPELLEE: | ROBERT CARPENTER |
| NATURE OF THE CASE: | CIVIL - WORKERS' COMPENSATION |
| DISPOSITION: | REVERSED AND REMANDED - 9/25/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 10/16/97 |


**EN BANC.**


**SULLIVAN, PRESIDING JUSTICE, FOR THE COURT:**


Introduction

¶1. This matter is before the Court on the petition for writ of certiorari filed by Jessie Spann, the claimant/appellant in a workers' compensation case. A hearing was held on July 20, 1992, before Administrative Law Judge Denise Lott, who ruled that Spann was not entitled to surgery or further treatment by treating physician Dr. John Frenz; that claimant had suffered no temporary disability for which compensation was due; and that claimant had suffered no permanent medical impairment attributable to this injury.

¶2. In its Order of February 15, 1993, the Commission in an unanimous decision, affirmed the finding and decision of the ALJ, *with the exception* that the commission ordered *continued treatment* by Dr.

Patrick Barrett. Rankin County Circuit Judge Robert Goza affirmed the Commission in full. Upon appeal, the Court of Appeals, McMillan, P.J., affirmed, joined by Thomas, P.J., King and Southwick, JJ. Diaz, J., dissented with a separate opinion joined by Coleman and Payne, JJ. Bridges and Herring did not participate. The Court of Appeals held:

> The Judgment of the Rankin County Circuit Court is affirmed in all respects except insofar as it affirmed the order of the commission limiting future medical expenses to those provided by Dr. Barrett. This provision of the order of the Commission is reversed and rendered.

¶3. The Court of Appeals recognized that Spann could be treated by Dr. Frenz, his physician of choice, rather than by Wal-Mart's doctor of choice. The statute states that the claimant is entitled to choose his treating physician, as long as that physician is qualified within the meaning of the statute. The employer and carrier can request that the claimant see a doctor of their choosing for a second opinion, but cannot mandate the primary treating physician. Although the Court of Appeals approved continuing "treatment," it, as had the ALJ, Commission, and lower court, disallowed the laprascopic type surgery recommended by the treating physician, finding that maximum medical recovery had been achieved; and that there was no temporary or permanent partial disability, despite the claimant's recognized need for continued treatment.

¶4. Certiorari review was granted by this Court on August 7, 1997.

**Facts**

¶5. All parties involved agree that Jessie Spann was a healthy, relatively new employee of Wal-Mart, participating in a training program under the supervision of his supervisor, Mark L. Tate. Tate provided the following testimony when asked whether Spann was a good employee:

> A. I recruited him. He didn't come to me for a job. I went to him and recruited him and also seeked [sic] his employers' statements about him and what type of worker he was. I observed him. I saw he was a hard worker and with Wal-Mart that's more or less what we are told to do. Go out and if they don't know the job we can teach them the job. We can train them.

¶6. All parties also agree, that on September 7, 1990, while in the course and scope of employment, a then healthy Jessie Spann, who was carrying a tire and tire mount, slipped and fell on a wet, slippery floor which had recently been cleaned with both water and degreasers and injured his back. Wal-Mart admitted the injury and sent Spann to see Dr. David Gandy. Spann felt that Dr. Gandy was not helping his recovery, and on his own went to see Dr. John Frenz in Brandon, Mississippi, who performed a myelogram, a CT scan and spinal x-rays while Spann was hospitalized. Dr. Frenz is certified by the American Board of Neurologic and Orthopedic Surgeons, and additionally board certified by the American Board of Clinical Neurosurgery and by the American Board of Spinal Surgery.

¶7. The radiologist who initially read the x-rays found an abnormality or bulging of the L 4-5 spinal disc, which was confirmed by Dr. Frenz. Dr. Frenz recommended that due to the abnormality at the L 4-5 spinal disc, that "he [Spann] have a partial removal of that disc by a procedure called automated percutaneous nucleotome disectomy, which more simply put is something similar to orthoscopic surgery of the knee [with] which many people are familiar." Dr. Frenz testified that he believed, based

on a reasonable medical certainty, that Spann could be relieved, at least in part, of his continuing symptoms and could reasonably be expected to have an improvement in his functional capacity if the procedure was completed.

¶8. Basing his opinion on Spann's history, examination, treatment and the diagnostic tests performed on him, Dr. Frenz opined that there was a direct causal relationship between the accident which occurred on September 7, 1990 and the set of complaints, symptoms and findings for which he treated him.

¶9. Upon the referral of Dr. Frenz, Spann asked Dr. Elmer Nix, an orthopedic surgeon, for a second opinion. Dr. Nix reported "a very minimal bulge of the L-4 disc" that he felt was "within normal limits." He further concluded that Spann appeared to be magnifying his symptoms during the course of the examination and opined that Spann should recover from his "lower back strain" in six to eight weeks. However, during the hearing before the Commission, Dr. Nix stated on cross-examination that his answers were uncertain because he had not seen Spann very often. The record shows that Dr. Nix saw and examined Spann on only one occasion. Dr. Nix also admitted on cross-examination that he had not reviewed Spann's MRI.

¶10. Spann also saw Dr. Patrick Barrett, another orthopedic surgeon, on a limited basis, upon the recommendation of his first attorney.[1] Dr. Barrett diagnosed " probable internal disc derangement 4-5," but stated that "his opinion would be that it would be less than a 50-50 chance that this [Dr. Frenz's suggested disectomy] would improve Spann's situation enough to go back to heavy work." Both Drs. Frenz and Barrett found that Spann could no longer perform the heavy work he had been doing prior to the injury.

¶11. After Spann returned to work, he was placed on light duty. Spann's supervisor testified that although Spann had been deliberately placed on light duty, he could not perform the work, and that on many occasions he could not work a full day because of the pain. The supervisor said that based on his observation Spann's pain prevented him from stooping or bending, and he could only stand for short periods of time.

### Issues Raised for Certiorari Review

**I. THE EVIDENCE IN THIS CASE IS OVERWHELMING THAT CLAIMANT HAS NOT REACHED MAXIMUM MEDICAL IMPROVEMENT, BUT IF THE COURT FINDS THAT HE HAS, THEN THE EVIDENCE IN THE RECORD OVERWHELMINGLY FINDS HIM TO BE DISABLED.**

**II. IT IS NOT WITHIN THE POWER OF THE COMMISSION TO DENY A CLAIMANT MEDICAL TREATMENT PRESCRIBED BY THE TREATING DOCTOR WHEN ALL MEDICAL OPINIONS AGREE AS TO THE BASIC MEDICAL DIAGNOSIS, WHEN THE TREATING PHYSICIAN IS ADJUDGED TO BE COMPETENT IN THE SPECIALTY AND FURTHER WHEN THIS TREATMENT IS NOT UNRELIABLE OR CONTROVERSIAL.**

**III. EVEN IF THE COMMISSION** HAS THE POWER TO DENY A CLAIMANT MEDICAL TREATMENT PRESCRIBED BY THE TREATING DOCTOR, IT WOULD BE AGAINST THE WEIGHT OF THE EVIDENCE IN THIS CASE.

Analysis and Authority

¶12. Our standard of review of workers' compensation cases is well established. If the Commission's finding of fact and order are supported by substantial evidence, then we are bound by them even though we as fact finder would have been convinced otherwise. *Fought v. Stuart C. Irby Co*., 523 So. 2d 314, 317 (Miss. 1988). We will exercise *de novo* review on matters of law. *KLLM, Inc., v. Fowler*, 589 So. 2d 670, 675 (Miss. 1991).

**I.**

¶13. The ALJ and full Commission found that Spann had reached maximum medical recovery. However, the Commission's order differed from that of the ALJ in that the Commission ordered continued treatment by Dr. Patrick Barrett. The Court of Appeals reversed and rendered that portion of the Commission's order limiting future medical expenses to those provided by Dr. Barrett, and found that the Commission exceeded its authority when it specified a particular doctor to provide further treatment in connection with Spann's injury. The Court of Appeals agreed that there was a duty to continue medical treatment for Spann. The ALJ, Commission, circuit court and Court of Appeals found that Spann had achieved maximum medical recovery and suffered no temporary or permanent disability.

¶14. The Order of the Commission directs Wal-Mart to "pay for said treatment and supplies as required by the nature and extent of the injury in the process of claimant's recovery as provided in Section 71-3-15." The Court of Appeals found that "[t]he language of the Commission's Order is somewhat troubling in that it seems to imply that Spann has not, in the opinion of the Commission, reached maximum medical improvement. Otherwise, it would make no sense to refer to '*the process of claimant's recovery*.' " The Court of Appeals went on to conclude that "[i]t is entirely possible that an injured worker may reach maximum medical improvement and still be bothered by recurring pain symptoms that are not of sufficient severity to be disabling." COA op. at 7.

¶15. This conclusion is troubling when either a common sense or legal analysis is applied to the situation before us. Spann was a perfectly healthy individual with no prior history of any back injury or pain, who was an excellent trainee in a heavy duty job as a mechanic. If Spann had achieved maximum medical improvement, following an injury all parties agree occurred during the course and scope of employment, then Spann should be pain free as he was prior to the accident, with full mobility, and able to return to his prior duties. If he has reached maximum improvement, and is still suffering from and being treated for pain, immobility, and inability to perform any but the lightest duties, then it logically follows that he has some temporary or permanent partial disability. The logical conclusion is that Spann has *not* achieved maximum medical recovery. Drs. Frenz and Barrett agree that Spann cannot return to his former heavy duties. Their only disagreement lies in the fact that Dr. Frenz is of the opinion that surgery would help, and Dr. Barrett is of the opinion that there is only "a 50-50 chance" that having the surgery would allow Spann to return to heavy duty work. Dr. Nix stated that Spann should be able to return to work at some point, but required "work hardening." Dr. Nix faltered during cross-examination and testified that, "Perhaps if I had seen him on several more occasions, I might have been more definite or more positive about some of my answers." This Court held in *Johnson v. Ferguson*, 435 So. 2d 1191, 1195 (Miss. 1983):

When an expert's opinion is based upon an inadequate or incomplete examination, that opinion

does not carry as much weight and has little or no probative value when compared to the opinion of an expert that has made a thorough and adequate examination.

¶16. Dr. Nix also testified that, "I did not as I recall as my records would reflect, I did not look at the MRI."

¶17. The following exchange took place during the direct examination of Dr. Frenz:

Q. And if he does not have this surgery that you recommend, would his disability then be in the form of a permanent nature?

A. Yes, it would.

Q. And would your statements earlier as to his restrictions as to employment now would they go forward on a permanent basis?

A. Yes, they would.

Q. Would you be able to at this time to give him a medical rating of disability to the body as a whole?

A. I would probably best be able to answer that question by stating he has an impairment of low back function that approximates 70 to 75 percent and his low back condition, including deranged disks and nerve root symptoms to the right lower extremity, cause him additional impairments so that in his present circumstance and considering his previous employment activities as a mechanic-type worker, I would have to think that he would be disabled.

¶18. As previously stated Dr. Barrett opined "it would be less than 50-50 that he would improve his situation enough to go back to heavy work [with surgery]." Thus, clearly Dr. Barrett is of the opinion that there is some temporary or permanent partial disability. The supervisor, Mark Tate testified:

A. He had . . . a lot of difficulty especially when he started taking lesser drugs which I encouraged him to get off the medication and maybe go for a TENS unit or something like that that could probably use [sic] his pain up or seek some type of therapy, but he was still in pain after he used the TENS unit or appeared to me anyway. You know, he had a hard time bending over. He'd stand for a little while. We got him a seat, but he couldn't always stand up or sit down around the desk because he had to go out and help customers . . . . And some days I had to send him home early or allow him to go home early.

¶19. None of the above excerpts from the record supports a conclusion that Spann reached maximum medical improvement, or in the alternative, the excerpts support the finding that if maximum medical improvement has been achieved by Spann, he then suffers from either a temporary or permanent disability.

¶20. Mississippi Code Ann. § 71-3-7 requires that compensation shall be payable for "disability" for an injury arising out of and in the course of employment. The question of degree and duration of disability is one of fact. *Wiggins v. Knox Glass, Inc.,* 219 So. 2d. 154 (Miss. 1969). The degree of disability is determined by (1) actual physical injury and (2) loss of wage earning capacity. *General*

*Elec. Co. v. McKinnon*, 507 So. 2d 363, 365 (Miss. 1987); *Bill Williams Feed Store v. Mangum*, 183 So. 2d 917 (Miss. 1966). A rebuttable presumption of no loss of wage earning capacity arises where the claimant's earnings after the injury are equal to or in excess of his earnings prior to the injury. *General Elec.* at 365.

> The statute has been construed by this Court to mean that post-injury earnings equal to or in excess of pre-injury earnings are strong evidence of non-impairment of earning capacity, *but that the presumption arising therefrom may be rebutted by evidence on the part of the claimant that the post-injury earnings are unreliable due to: increase in general wage levels since the time of accident, claimants own greater maturity and training, longer hours worked by the claimant after the accident, payment of wages disproportionate to capacity out of sympathy to claimant, and the temporary and unpredictable characteristics of post injury earning.* (Citations omitted).

*General Electric Co.*, 507 So. 2d at 365, citing *Wilcher v. D.D. Ballard Construction Co.*, 187 So. 2d 308, 310-311 (Miss. 1966)( string citation omitted)(emphasis in original).

¶21. This Court went on to hold:

> Moreover, this list is certainly not an exclusive one. *See, Karr v. Armstrong Tire & Rubber Co.*, 216 Miss. 132, 61 So. 2d 789(1958). Our recent decision in *Hall of Mississippi, Inc., v. Green,* 467 So. 2d 935 (Miss. 1985), reflects that any factor or condition which causes the actual post-injury wages to become a less reliable indicator of earning capacity will be considered.

*McKinnon* at 365.

¶22. Spann was earning $4.75 per hour before his injury, and in his light duty job created for him post-injury, he was paid $4.85 cents per hour. However, according to his supervisor, Spann exhibited clear signs of pain and disability and was unable to perform his new job well. In *DeLaughter v. South Central Tractor Parts*, 642 So. 2d 375 (Miss. 1994), this Court reversed the Commission's denial of disability benefits where an employee returned to work and continued to work despite severe pain, but could not perform all of his current duties. The same is true of *McNease v. Cooper Tire and Rubber Co.*, 627 So. 2d 321, 325 (Miss. 1993), in which this Court held: "Clearly ignored is testimony by McNease, corroborated by his supervisor, that McNeese continued to complain of back pain while doing his job . . . "

¶23. There is no substantial evidence in this record that Spann has achieved maximum medical recovery; or put in the alternative, there is substantial evidence that if maximum medical recovery has been achieved, there exists some temporary or permanent partial disability. It cannot be said that this claimant has been restored to his state of health existing prior to injury. There is no dispute that the injury occurred during the course and scope of employment. There was no pre-existing injury. Everyone with the exception of the ALJ recognizes and admits that payment for continuing treatment and care is owed to Spann, and Drs. Frenz and Barrett both agree that in his present condition, Spann is not able to do any heavy duty work. Dr. Nix, who said that Spann should be "work hardened" prior to returning to his former duties, admits he saw Spann on only one occasion, and did not review Spann's MRI.

¶24. This Court has held that "the act should be liberally construed to carry out its beneficent remedial purpose . . ." *Stuart v. Brown*, 543 So. 2d 649, 652 (Miss. 1989). On this issue we remand to the Commission for a determination of whether or not maximum medical improvement has been achieved, and if so, whether there exists some temporary or permanent partial disability.

## II. and III.

¶25. The ALJ, Commission, Circuit Court and Court of Appeals denied Spann the laprascopic surgery recommended by Dr. Frenz, Spann's primary treating physician.[2] Spann asserts in his petition for writ of certiorari that "[i]t is not within the power of the Commission to deny a claimant medical treatment prescribed by the treating doctor when all medical opinions agree as to the basic medical diagnosis, when the treating physician is adjudged to be competent in the specialty and further when this treatment is not unreliable or controversial." Spann further asserts that "even if the Commission has the power to deny a claimant medical treatment not prescribed by the treating doctor, it would be against the weight of the evidence in this case."

¶26. The Court of Appeals addressed these issues as two inquiries:

> First, whether Spann is correct as a matter of law, that it is not within the power of the commission to deny him medical treatment recommended by his treating physician. Secondly, and assuming that the first issue is resolved against Spann, there is the question of whether the decision of the commission, though one permitted under the law, is nevertheless erroneous as being unsupported by substantial evidence.

COA op. at 4.

¶27. The Court of Appeals held that, "It seems clear to this Court that the commission is not compelled, as a matter of law, to direct payment for all medical services provided simply on the allegation that such services were related to a work injury." COA op. at 5. This wording is a bit puzzling as there is no mere "allegation" that the injury or services [surgery] would relate to a work injury. Wal-Mart admitted the injury. There was no previous injury, pain or disability of any sort prior to the admitted work related injury. Spann has continued to attempt to work at the lighter duty job created for him after injury, although his supervisor testified that Spann cannot perform the duties of even the light duty job.

¶28. In *Lanterman*, this Court reversed a case where the Commission had denied payment for certain services that had already been provided. The Court of Appeals cites *Lanterman v. Roadway Express, Inc.*, 608 So. 2d 1340, 1346 (Miss. 1992), in support of its holding. holding. However, a review of the case reveals that *Lanterman* would appear to support Spann's argument, rather than the holding of the Court of Appeals. This Court held:

> It was error to deny compensation to Lanterman for the services of Dr. McKelvie, his chiropractor. Dr. McKelvie's services clearly were related to both his first and second injury. The Administrative Judge awarded compensation for the services of Lanterman's neurologist, Dr. Andy, but not for Dr. McKelvie. This assignment of error *has merit and the order of the circuit court will be reversed and this issue remanded to the Commission* for a determination as to whether or not the chiropractic treatment was *necessary and the charges reasonable. White*

*v. Hattiesburg Cable Co. & Travelers Insurance Co.*, 590 So. 2d 867, 870 (Miss. 1991).

*Id.* at 1346 (emphasis added).

¶29. This Court further held:

> Lanterman is *correct* when he contends that *he is entitled to be compensated* by Roadway for all future medical treatment by doctors *selected by Lanterman for such period of time as the nature of his injuries require.*[(3)]

*Id.*

¶30. In *White v. Hattiesburg Cable Co*., 590 So. 2d 867 (Miss. 1991), this Court cited Dunn *Mississippi Workers' Compensation,* § 340 (3rd ed. 1982):

> **§ 340 Generally.** The injured employee is entitled to medical and hospital care without limit, but the fees and other charges are subject to regulation by the commission and may not exceed those which prevail in the same community. . . . Medical benefits include *surgical treatment*, nursing, hospital service, medicine, crutches, artificial members and other apparatus.
>
> The purpose of unlimited services is to insure restoration of the employee to the maximum usefulness that he can attain under the physical impairment resulting from the injury, and the services are in addition to all other compensation benefits, and this is the established yardstick by which benefits are to be measured.
>
> In this field, liberality is especially notable and, in practical effect, it is *the obligation of the employer to provide whatever is needed or is reasonably calculated to carry out the humanitarian purposes of the Act.* (Footnote omitted; emphasis added).

*White* 590 So. 2d at 869-70.

¶31. This Court went on to hold:

> There is a broad public policy behind the Act to provide the necessary treatment to restore the injured worker to health and productivity. This should be the focus of the Commission. *Was this treatment necessary? Are the charges reasonable?* These questions should be thoroughly investigated, but if both are answered in the affirmative White cannot be denied benefits *solely* because the service was rendered by a licensed chiropractor.

*Id.* at 870.

¶32. And finally, in *Oswalt v. Abernathy & Clark*, 625 So. 2d 770 (Miss. 1993), this Court denied payment for a procedure that was controversial because it was considered unreliable and not indicated by Oswalt's type of injury. However, we reversed the Commission's refusal to pay for treatment that was "reasonable and necessary."

¶33. Wal-Mart is obligated, pursuant to the Act, to allow Spann to have the surgery recommended by Dr. Frenz, the primary treating physician. Dr. Barrett states that in his opinion, having seen Spann on a limited basis, that there is only a 50-50 chance the laprascopic surgery will allow Spann to return to

heavy work, and he does not express an opinion as to whether or not this surgery would relieve Spann's pain. Only Dr. Nix, whose opinion pursuant to *Johnson*, 435 So. 2d at 1195, *supra*, "has little or no probative value when compared to the opinion of an expert that has made a thorough and adequate examination," took the position that surgery was unnecessary or would not be beneficial to Spann's recovery.

¶34. Spann's third and final argument is that "Even if the Commission has the power to deny a claimant medical treatment prescribed by the treating doctor, it would be against the weight of the evidence of this case." This issue will not be addressed as the case law and Act mandate that as long as a particular treatment is deemed "necessary and reasonable" by a competent treating physician, the employee and carrier are obligated to furnish such treatment. There is no dispute that Dr. Frenz is a competent physician as defined by the Act.

## Conclusion and Recommendation

¶35. The record reflects that this case presents a worker who was injured during the course and scope of his employment doing heavy work for Wal-Mart, who had no pre-existing condition or previous injuries, and who now is in extreme pain, unable to perform even light duties well. The injury is admitted, Spann's inability to do the work, even light work, is undisputed by Wal-Mart and the carrier, and all medical evidence concludes that Spann has a bulging disc as a result of his work related injury. Yet, the Respondents conclude that Spann has reached maximum medical recovery, has no temporary or permanent partial disability, and refuse to pay for the surgery recommended by the primary treating physician. Wal-Mart's obligation to Spann is of statutory origin. It is obligated to "furnish such . . . surgical. . . treatment. . . for such period as the nature of the injury or the process of recovery may require." Miss. Code Ann. § 71-3-15 (1972).

¶36. Following surgery, if still indicated, and the appropriate period of recovery, it should be determined whether or not maximum medical recovery has indeed been achieved, and if so, whether any temporary or permanent partial disability exists. The judgment of the Court of Appeals is reversed. The case is remanded to the Commission for action consistent with this opinion.

¶37. **REVERSED AND REMANDED.**

**LEE, C.J., PRATHER, P.J., PITTMAN, BANKS, McRAE, ROBERTS AND MILLS, JJ., CONCUR. SMITH, J., NOT PARTICIPATING.**

1. Spann initially saw an attorney in Hattiesburg, but was unable to make the necessary trips back and forth to Hattiesburg, and hired his present attorney who practices in Pearl, Mississippi.

2. Dr. Barrett opined that there was only a 50-50 chance the surgery would enable Spann to resume heavy work duties, which indicates a 50 percent chance the surgery would enable Spann to resume heavy work duties. Aside from that consideration, Dr. Frenz stated that in his opinion, the surgery would alleviate Spann's pain. It logically follows that Spann would not be dependant upon the strong medication prescribed to relieve his pain, and which, according to Spann's supervisor, further

hindered Spann's ability to perform even light duties.

3. Miss. Code Ann. § 71-3-15 states in pertinent part: (1) the employer *shall furnish* such medical, *surgical*, and other attendance or treatment, nurse and hospital service . . . for such period as the nature of the injury or the process of recovery may require. . . .