733 So.2d 301 (1998)
Patricia A. DULANEY, Appellant,
v.
NATIONAL PIZZA COMPANY, Lumbermans Mutual Casualty Company, And American Motorist Insurance Company, Appellees.
No. 97-CC-00224 COA.
Court of Appeals of Mississippi.
November 24, 1998.
Rehearing Denied February 9, 1999.
Certiorari Denied April 22, 1999.
*303 Gene Barton, Pontotoc, Attorney for Appellant.
Kenneth H. Coghlan, Oxford, Attorney for Appellees.
BEFORE THOMAS, P.J., KING, AND SOUTHWICK, JJ.
SOUTHWICK, J., for the Court:
¶ 1. Patricia Dulaney filed a workers' compensation claim as a result of a fall. She was awarded temporary benefits but not all her claimed medical expenses. On appeal she alleges error in not receiving permanent disability benefits and in not having the fees of one of her physicians paid. The employer cross-appeals arguing that the fees of another physician should also have been rejected and that the date of maximum medical improvement is clearly erroneous. We affirm the Commission except as to the denied expenses of one doctor. We reverse and remand regarding that issue.

FACTS
¶ 2. While employed on August 17, 1991, by a Pizza Hut in Fulton, Patricia Dulaney slipped on a wet floor in the restaurant's kitchen and was injured. She went to the emergency room shortly afterward and then at her employer's suggestion to see Dr. Marlin, her family physician. Dr. Marlin referred her to Dr. Doorly, a neurosurgeon. Doorly treated her for back pain until November 1991, when Dulaney quit attending a back therapy program. Doorly did not diagnose Dulaney as having any permanent impairment. Without a referral from another doctor, Dulaney began to see Dr. John McFadden, a pain management specialist, in December of 1991.
¶ 3. A dispute arose between the parties at this time regarding continuing treatment. An order from Administrative Judge Linda Thompson is referenced, but does not appear in the record, that the employer was to pay for additional medical services. This order resulted in Dulaney being treated at the Semmes-Murphey Clinic. There Dr. Gaines, a neurosurgeon, first examined Dulaney on July 17, 1992. After several diagnostic tests, Gaines recommended therapy. Dulaney was examined by Dr. Carro, also a neurosurgeon, who diagnosed Dulaney with "chronic pain syndrome" which he felt "would resolve when the litigation process was closed." Carro referred Dulaney to Dr. Anton, a psychologist, who saw her on January 29, 1993. Anton felt Dulaney was exaggerating her claims. All these doctors were provided by the employer and liability for the expense of their care is not in dispute.
¶ 4. Throughout this period, Dulaney continued to see Dr. McFadden. He referred Dulaney to Dr. Bruce Senter, an orthopedic surgeon. Dulaney first saw Senter on February 15, 1993. Senter recommended back surgery. Dulaney underwent a total of three operations by Senter. The first occurred on April 13, 1993, the second on March 1, 1994, and a third several weeks later.
¶ 5. The Commission found that the employer was responsible for the treatment by Senter but not by McFadden. The Commission accepted Senter's evaluation as to Dulaney's medical condition and found his treatment to be reasonable and necessary. Senter's opinion was also accepted that Dulaney's date of maximum medical improvement was March 1, 1995, not November 25, 1991, as asserted by the employer. Although accepting Senter's diagnosis that Dulaney had a seventeen percent permanent impairment, the Commission found no permanent industrial disability.

*304 DISCUSSION
¶ 6. A decision of the Workers' Compensation Commission is upheld if the fact-findings are based upon substantial evidence and if there is no error of law. Metal Trims Industries, Inc. v. Stovall, 562 So.2d 1293, 1296-97 (Miss.1990). With that deference we proceed with our review.

1. Denial of permanent benefits.
¶ 7. Dulaney argues that the Commission erred in refusing to award permanent partial disability benefits because it improperly applied a 1992 statutory amendment to her claim based on a 1991 injury. The amendment removed a requirement that a $25 minimum weekly payment be made for permanent partial disability. Cf. Miss.Code Ann. § 71-3-13(1) (Rev.1995) & 1990 Miss. Laws ch. 405, § 7. Whatever merit this argument may have is academic unless we find that the Commission erred in refusing to find permanent disability at all. We thus turn to whether there is substantial evidence supporting the Commission's finding.
¶ 8. Dr. Senter's testimony established that Dulaney had a seventeen percent permanent impairment after her maximum medical improvement. That is not by itself enough to prove an industrial disability for purposes of workers' compensation law. "Generally, `disability' means incapacity because of injury to earn the wages which the employee was receiving at the time of the injury in the same or other employment." Jordan v. Hercules, Inc., 600 So.2d 179, 183 (Miss.1992). Dulaney failed to seek any employment after March 1, 1995, her date of maximum medical improvement. She argues that this is because she was on Social Security disability. Regardless of what some other governmental agency concludes and on what basis it reaches that conclusion, the obligation of a claimant under workers' compensation rules is to prove her industrial disability. Dulaney's principal witness on her injuries and necessary treatment, Dr. Senter, stated that she had a seventeen percent medical disability with a restriction of not lifting more than 45 pounds "and that would be the extent of my limitations." It was uncontested that she made no effort to find additional employment after recovery.
¶ 9. Dulaney failed to prove that she had sought but nonetheless failed to gain alternate employment. This prevents an award of permanent disability benefits. Georgia Pacific v. Taplin, 586 So.2d 823, 828 (Miss. 1991).

2. Fees of Drs. McFadden and Senter
¶ 10. The parties contest different parts of the Commission's decisions on medical expense liability. Dulaney asserts that Dr. McFadden's services should be compensated, and the employer argues that Dr. Senter's should be rejected. Correct analysis of these issues requires attention to the time line of visits by Dulaney to these two physicians and a comparison of the law which was applicable when those visits occurred as the statute in question was amended during this period.

a. Dr. McFadden
¶ 11. Dulaney first went to see McFadden in December of 1991. The version of section 71-3-15 in effect at that time provided in relevant part that the "injured employee shall have the right to accept the services furnished by the employer or, in his discretion, to select a competent physician of his choosing to administer medical treatment." Miss.Code Ann. § 71-3-15 (Rev.1989) (emphasis added). This language was changed to "one (1) competent physician" on July 1, 1992, eight months after Dulaney started with Dr. McFadden. Miss.Code Ann. § 71-3-15 (Rev.1995). That "a" might mean something other than "one" certainly seems, at least initially, to be a strained view. The Commission in a 1985 case that Dulaney cites held that "a competent physician" should be read broadly to mean any number of physicians. McKay v. McCarty-Holman Co. Inc., Miss. Workers' Compensation *305 Comm. No. 84-01647-C-5686 (1985).[1] The Commission relied on the beneficent purposes of the Act, the fact that the legislature could have used a number instead of the word "a" but did not, and the difficulty that limiting a patient just to one physician could often cause. We do not know if the Commission applied this view in other cases after McKay.
¶ 12. It is necessary to interpret statutes consistent with reason and common sense. The word "a" is singular, not plural. We do not deny the validity of the Commission's concern in 1985it is not a perfect rule that an injured person could only go to one physician of her own choosing. However, until the 1982 amendments, a claimant could go to zero physicians of her own choosing and had to accept the medical care provided by the employer. Ingalls Shipbuilding Corp. v. Holcomb, 217 So.2d 18, 20-21 (Miss.1969). From having no choice at all, a claimant received significant discretion through the 1982 amendment. Even if it might be "fair" in some conceptions to allow a claimant to see a multitude of physicians of her own choosing, at least allowing her to see one is "fairer" than a prohibition on seeing any.
¶ 13. However, we do not read the 1982 language so literally that the physician selected could not make necessary referrals. To hold that the 1982 legislature on the one hand was offering claimants a chance to make their own medical choices, then on the other hand was taking most of the benefit of that choice back by imposing an impractical restriction, is not a common sense reading of the statute. The initial doctor is the claimant's selection; referrals are the initial physician's selections.
¶ 14. Under the quoted language, in effect from 1982 until 1992, we hold that an initial physician such as Dulaney's family doctor, could make a preliminary diagnosis and then refer the patient to someone more expert regarding that ailment. We see no legislative limit on the number of referrals that successive doctors could make as proper care for a claimant was sought. Numerical limits on referrals came in the 1992 amendments, but did not exist in the 1982 version.
¶ 15. As the supreme court has frequently done, we finally rest our interpretation on the broad public policy for permitting injured workers to receive adequate treatment and return to work, a policy that extends throughout the Act. White v. Hattiesburg Cable Co., 590 So.2d 867, 870 (Miss.1991). Words in this Act must be read in that context but without distorting the language used. We interpret the discretion given a claimant in 1982 to mean that Dulaney could only select one doctor and then follow the treatment, including the referrals, that was prescribed for her. If the claimant became disillusioned with that choice after treatment had begun, there was no right to require an employer to pay for another personal choice physician.
¶ 16. The employer had to pay for Drs. Marlin and Doorly. That is not contested. There was no obligation to pay for Dr. McFadden, who was neither the initial physician selected nor a referral.
¶ 17. After seeing these three doctors, Dulaney then saw several employer-provided doctors at the Semmes-Murphey Clinic from July 1992 until January 1993. No dispute as to their fees are involved. The argument here is that Dulaney was then entitled to exercise her discretion once again for a personally selected physician. We discuss those issues next.

b. Dr. Senter
¶ 18. The statute had changed by the time that Dulaney saw Dr. Senter. *306 The last time that Dulaney saw any of her employer-provided doctors was on January 29, 1993. She again saw Dr. McFadden on February 8, 1993, and Dr. Senter a week later. At that time the statute stated this:
The injured employee shall have the right to accept the services furnished by the employer or, in his discretion, to select one (1) competent physician of his choosing and such other specialists to whom he is referred by his chosen physician to administer medical treatment.
1992 Miss. Laws, ch. 577, § 3 (effective July 1, 1992 until July 1, 1995). The referrals authorized were limited to one per speciality or sub-specialty. Id. As did the earlier version of the statute, this language focuses on the claimant's making a selection. She could either "accept the services furnished by the employer, or" exercise her discretion and select one competent physician and various referrals. The new issue raised as to Dr. Senter was whether after making one selection, such as to use the employer's doctors, Dulaney could change her mind and start to use her own.
¶ 19. Preliminarily, we note that Dulaney had already made one change in the exercise of discretion and no objection to it is here made. When she stopped seeing Drs. Marlin and Doorly and went to the Semmes-Murphey Clinic doctors provided by her employer, she switched from the personally selected doctor route and accepted the services furnished by the employer.
¶ 20. We find considerable guidance in Spann v. Wal-Mart Stores, Inc., 700 So.2d 308 (Miss.1997). Though the case dealt with the 1982 version of the statute, the language was the same about having the right to use the employer's doctors or in the exercise of discretion select one's own. After Spann's injury, his employer "sent Spann to see Dr. Gandy. Spann felt that Dr. Gandy was not helping his recovery, and on his own went to see Dr. John Frenz" whose subsequent treatment was the issue on appeal. Id. at 310. The issue in Spann was not the contested doctor's status under the statute, but whether his recommended treatment could be rejected as medically unnecessary and/or not connected with the work injury. Id. at 314.
¶ 21. Spann does not discuss the propriety of leaving an employer-provided doctor in order to start seeing a personally-selected physician. However, it is apparent from the facts that Spann did just that. Spann went to an employer-selected physician first and only after doing so did Spann exercise his option under section 71-3-15(1) to select his own physician. Though the court did not discuss this switching from one exercise of discretion (accept employer's physicians) to a different discretion (select a personal physician), permitting that is a reasonable interpretation of section 71-3-15. What the statute reasonably requires is that a claimant may not receive payment for two sets of physicians that were being seen at the same time. Once fully abandoning the employer's doctors, as Dulaney did, a claimant may again exercise discretion to see a personal choice physician. However, as will be discussed below, there is always the requirement that the claimant is still medically entitled to treatment for a work injury.
¶ 22. A claimant's being limited to one set of doctors at a time is evident from the statutory language. A claimant may "accept the services furnished by the employer or, in his discretion," select his own. The disjunctive "or" instead of the conjunction "and" is clear, practical, and a balance struck for fairness to both parties.
¶ 23. Whether only one exercise of discretion could occur has been unclear since the statutory language was first adopted. "The [1982] amendment is silent on the question whether a choice once made, as by electing to accept medical services initially furnished by the employer, may be later changed by the employee...." DUNN, MISSISSIPPI WORKMEN'S COMPENSATION § 341, at 436 (3d ed.1982). As indicated, the choice option continued in the 1992 amendment though there was more *307 structure given to it. Spann permitted this even if the case did not address the issue explicitly. Having said that, nothing in Spann permits seeing a privately chosen physician while still seeing an employer provided physician. We answer the question asked in the quote from the Dunn treatise by saying that a claimant may change her choice between employer-provided and personally-selected physicians, but at all times a choice has to be made.
¶ 24. At the time that Dulaney was seeing Dr. Senter, she was no longer availing herself of any employer-provided doctors. Under the statute as it has existed since July 1992, and indeed ever since 1982 on this point, we find that the claimant could abandon the employer-provided doctors after pursuing treatment with them, and again make her personal selection.
¶ 25. However, just because we find no prohibition on a claimant's exercising discretion a second or even as here a third time, that does not mean that there are no limitations at all. The first sentence of this section has throughout the time period said that the "employer shall furnish such medical" and other treatment as "the nature of the injury or the process of recovery may require." Miss.Code Ann. § 71-3-15 (Rev.1995). That and similar provisions of the Act have led the supreme court to hold that the focus of the Commission in determining whether medical services were proper must be this:
Was this treatment necessary? Are the charges reasonable? These questions should be thoroughly investigated....
White v. Hattiesburg Cable, 590 So.2d at 870. Another case required the Commission to reexamine whether certain medical treatment "was necessary and the charges were reasonable." Lanterman v. Roadway Express, Inc., 608 So.2d 1340, 1346 (Miss.1992). The claimant's statutory right to select a physician does not mean that the physicians services are reasonable or necessary. If they are not, then no payment by the employer is required. Dr. Senter's bills, however, have been found to be reasonable and necessary. The Commission based its findings regarding the claimant's condition, her date of maximum medical improvement, and other central details on the opinion of Dr. Senter. We find no error in the employer being required to pay these bills.
¶ 26. The fact that the Commission found that Senter's bills were compensable, partly because it had relied on his testimony, bears separate examination. The supreme court held that "whenever the Commission bases its findings on the opinion of a treating physician not authorized by the employer, and when the employer has refused to authorize or pay for, or otherwise provide proper medical treatment for the claimant, then those treatments shall be covered." Jordan v. Hercules, 600 So.2d 179, 185 (Miss.1992). The injury at issue in Hercules, however, occurred under the pre-1982 version of section 71-3-15. It prescribed that "[i]f the employer fails to provide [proper medical care] after request by the injured employee, such injured employee may do so at the expense of the employer." Miss.Code Ann. § 71-3-15 (1972). This language was eliminated by the 1982 amendment and has not been the law since June 30, 1982. It was replaced by language allowing a claimant to "accept the services furnished by the employer or, in his discretion, to select a competent physician of his choosing to administer medical treatment." Miss.Code Ann. § 71-3-15 (Rev.1989).
¶ 27. It is this now-discarded language that the court used to hold that any doctor who provides necessary care and whose testimony was relied upon by the Commission must be compensated. Hercules, 600 So.2d at 185. Thus the continuing applicability of this part of Hercules, in light of the statutory changes, is questionable.
¶ 28. We return to a discussion of Dr. McFadden, as his treatments (and bills) continued after Dulaney accepted the employer's physicians and started going to the Semmes-Murphey doctors. Once the *308 claimant accepts the employer's physicians, she has exercised her discretion under section 71-3-15. The company does not have to pay both for their own and for the claimant's doctors for treatment being provided simultaneously. By accepting the employer-provided care, Dulaney lost the right to reimbursement for any other, personally-selected doctors during that same time-period.
¶ 29. We must conclude that none of Dr. McFadden's bills are compensable until Dulaney stopped seeing the employer-provided doctors in January 1993. As for McFadden's subsequent treatment, an issue would arise of whether he was a personally-selected physician. He seems clearly to have been, and he is the doctor who referred Dulaney to Dr. Senter. Thus his bills beginning at the time Dulaney returned to him after seeing the last of the employer doctors are compensable if found to be reasonable and necessary by the Commission.
¶ 30. Payments for treatments by Dr. McFadden have been disputed before, became the focus of appeals, and at times ultimately were rejected. E.g., Oswalt v. Abernathy & Clark, 625 So.2d 770, 773-774 (Miss.1993). However, the Commission did not reject Dr. McFadden's services here because they were not medically useful or necessary. Instead, the Commission found that Dr. McFadden was neither Dulaney's initial selection nor a referral. We have found that this is an incorrect view of Dr. McFadden's status. Thus we reverse and remand the issue regarding Dr. McFadden's fees to the Commission for further proceedings regarding the medical necessity or usefulness of the services.

3. Date of maximum medical improvement
¶ 31. The employer contends that Senter's opinion as to Dulaney's medical condition and date of maximum medical improvement should not be accepted. The Commission is the finder of fact and must decide which physician's opinion is the most credible. The decision to accept Dr. Senter's opinion is easily supported by the record given Senter's experience in spinal surgery.
¶ 32. THE JUDGMENT OF THE CIRCUIT COURT OF ITAWAMBA COUNTY IS AFFIRMED IN PART AND REVERSED IN PART AND THE CAUSE IS REMANDED IN PART TO THE COMMISSION. COSTS OF THIS APPEAL ARE ASSESSED EQUALLY TO THE APPELLANT AND TO THE APPELLEES.
BRIDGES, C.J., McMILLIN AND THOMAS, P.JJ., COLEMAN, DIAZ, HERRING, HINKEBEIN, KING, AND PAYNE, JJ., CONCUR.
NOTES
[1] Though Dulaney wishes us to use McKay on the issue of her discretion to choose several physicians, she does not highlight that the case also holds that the claimant failed to prove a permanent loss of wage-earning capacity in "view of the claimant's lack of efforts to secure the same or other employment" after reaching maximum medical improvement. McKay at 3.