McMILLIN, C.J.,
for the Court:
¶ 1. This is an appeal by Sheila Napier, an employee of Franklin Manufacturing Company, who sought workers’ compensation benefits for an on-the-job back injury. The Workers’ Compensation Commission determined that Napier had suffered a permanent loss of wage earning capacity calculated to be $15 per week. Napier, dissatisfied with the level of loss of wage earning capacity assessed by the Commission, appealed without success to the Circuit Court of Chickasaw County. She has now appealed that decision to this Court, contending (a) that the administrative judge improperly considered evidence received in violation of discovery rules, and (b) that there was not substantial evidence to support such a low determination of loss of wage earning capacity but that, in fact, the evidence showed a substantially greater loss of capacity. We find no error and affirm.
¶ 2. While both Franklin Manufacturing and its workers’ compensation insurance carrier, Liberty Mutual Insurance Company, are before the Court as appellees, their interests in this matter appear identical. Therefore, for purposes of clarity, these parties will be referred to collectively as “Franklin Manufacturing.”
I.
Facts
¶ 3. Napier alleged that she received a repetitive motion type injury to her back while performing her duties as a factory worker for Franklin Manufacturing, a producer of upholstered furniture. Napier’s duties involved physical labor associated with adding the stuffing material to the backs and arms of upholstered furniture pieces. After a period of convalescence, Napier was released to return to work by her treating physician, the only restriction being that she not lift more than fifteen pounds and that she not engage in repetitive trunk bending or twisting. Napier attempted to return to work but felt she ' could not continue because the work caused the return of her pain symptoms. After a course of work-hardening therapy, her treating physician released her to re *1034 turn to work once again with the same restrictions. However, before permitting Napier to return to work, Franklin Manufacturing sent Napier to another physician who saw her several times. This doctor prescribed a further course of therapy, but Napier, after initially beginning the program, elected not to pursue it. This second physician, apparently of the opinion that Napier’s complaints of pain were largely of a non-organic origin, released her to return to work with a diagnosis of five percent loss of use of the body as a whole but without restriction as to any physical activity. Napier returned to Franklin Manufacturing once again and was put to work performing similar duties to those she had done in the past. However, after approximately two hours, she reported her inability to continue because of the reoccurrence of debilitating pain symptoms; whereupon she left the facility and has not returned despite the fact that Franklin Manufacturing, on at least one subsequent occasion, contacted her and asked her to return to work. As of the time of the hearing before the administrative judge, Napier had not worked anywhere else after leaving Franklin Manufacturing.
¶ 4. Napier, in her testimony, contended that the duties associated with the positions she had previously had at Franklin Manufacturing were such that they routinely exceeded the restrictions imposed by her first treating physician and that was the reason her pain symptoms returned when she attempted to go back to work. One of Franklin Manufacturing’s witnesses was a vocational expert who had evaluated Napier and issued a report, which was furnished in advance of the hearing to Napier, in which he purported to identify a number of employing entities in the area that had available jobs that could be performed by Napier taking into consideration the medically-imposed restrictions on her activity. In the course of this vocational expert’s testimony at the hearing, he was permitted to testify, over Napier’s objection, that he had gone to Franklin Manufacturing to observe workers in positions similar to those formerly held by Napier and that, based on his observations, he concluded that the routine duties of those positions did not exceed the limits on physical activity recommended by Napier’s first treating physician. Napier’s counsel’s objection was based on the fact that nothing in the vocational expert’s reports and no discovery responses indicated that Napier was going to testify as to that subject.
II.
Expert Witness
¶ 5. Napier objected at the hearing before the administrative judge when David Stewart, a vocational expert retained by Franklin Manufacturing, was asked about his observations of employees at Franklin Manufacturing performing the kinds of jobs held by Napier prior to her back problems. Napier’s counsel charged that this constituted surprise since there had been no indication during discovery that Stewart would testify to this effect. Franklin Manufacturing contends that this testimony by Stewart was in the nature of rebuttal to Napier’s own testimony as to the duties of her former position and, in particular, her testimony that a person occupying that position was routinely required to perform twisting, stooping, and lifting activities that exceeded the limits imposed on her by her treating physician. It was clear from the reports furnished to Napier by Franklin Manufacturing that the principal thrust of Stewart’s evidence related to identifying jobs that Napier could perform after taking into account her medically-imposed physical limitations. *1035 His report included references to the classification of the job of upholstery filler in terms of difficulty of performance as identified in the Dictionary of Occupational Titles, 1991 Edition, a research source commonly used by those in his profession. A part of his work consisted of identifying jobs that Napier could perform, as specifically set out in his report. The purpose of discovery is to prevent unfair surprise, traditionally referred to as “trial by ambush.” Broadhead v. Bonita Lakes Mall, Ltd. Partnership, 702 So.2d 92 (¶ 36) (Miss.1997).
¶ 6. It is difficult to see how, on these facts, Napier could legitimately claim surprise when Stewart was permitted to offer evidence of his observations of the nature and degree of difficulty of the various tasks involved in performing the job of upholstery filler at Franklin Manufacturing when the entire thrust of his report was involved with matching Napier’s diminished physical abilities with jobs available in her area. We note further that there was other credible evidence in the record describing the tasks associated with working as an upholstery filler at Franklin Manufacturing such that, even if Napier had a legitimate argument for unfair surprise as to Stewart’s testimony, the error would seem harmless. We, therefore, decline to set aside the Commission’s decision on this basis.
III.
The Degree of Loss of Wage-Earning Capacity
¶ 7. Napier’s claim of permanent back injury, in order to entitle her to compensation, requires proof of the injury itself together with evidence as to the impact that this injury has on her ability to earn wages. Miss.Code Ann. § 71-3-17(c)(25) (Rev.2000). Spann v. Wal-Mart Stores, Inc., 700 So.2d 308 (¶ 20) (Miss. 1997). An injury to the back is not of the type scheduled in Section 71—3—17(c)(1) through (24) of the Mississippi Code, so that proof of permanent diminished physical capacity, standing alone, does not entitle a claimant to compensation. Miss.Code Ann. § 71-3-17(c)(25) (Rev.2000). In this case, the Commission, faced with conflicting evidence, found favorably to Napier on whether she had suffered a permanent physical disability that would affect her ability to earn wages. It did so by electing to give credence to the treating physician who assigned permanent restrictions to her physical activities even though the other treating physician had not suggested any restrictions on her ability to perform work.
¶ 8. Based on this finding, the Commission then determined that these permanent limitations on her ability to perform certain physical tasks translated to a diminished wage earning capacity of $15 per week. It is somewhat difficult to determine how this calculation was made since the Commission’s decision included a finding that Napier was offered her old position back and “[t]he weight of the credible evidence is that the position offered by [Franklin Manufacturing] met Claimant’s physical restrictions.” Nevertheless, citing the proposition that the workers’ compensation statutes are to be liberally construed, the Commission made its finding. To the extent that there is error in that determination, the error is harmful to Franklin Manufacturing and not to Napier. However, there was no cross-appeal by Franklin Manufacturing attacking the propriety of this award. We are, in all events, satisfied that there is not substantial evidence in this record to support an award of a greater decrease in wage earning capacity than that found by the Commission. In that circumstance, our obligation is to affirm.
*1036 ¶ 9. THE JUDGMENT OF THE CIRCUIT COURT OF CHICKASAW COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING and SOUTHWICK, P.JJ., PAYNE, BRIDGES, THOMAS, LEE, IRVING, MYERS and CHANDLER, JJ., concur.