McMILLIN, C.J.,
for the Court.
¶ 1. James Arendale has appealed to this Court from a judgment of the Circuit Court of Leflore County affirming a decision of the Mississippi Workers’ Compensation Commission. The Commission awarded Arendale benefits for a work-related permanent partial disability found to have adversely impacted his ability to earn wages. Arendale contends that the Commission set his benefits too low because it applied an incorrect legal standard in determining his level of compensation. The Commission based the compensation award on diminished wage-earning capacity but Arendale contends that his disabilities arose from scheduled member injuries. He further contends that, under the proof, he has sustained a total industrial loss of use of both arms, thus entitling him to the maximum benefits available under the Workers Compensation Act, rather than the twenty percent permanent partial disability benefits awarded by the Commis *450 sion. We find the issues presented on appeal to be without merit and affirm the judgment of the circuit court.
I.
Facts
¶ 2. Arendale was engaged in shipping-related duties for his employer, Balkamp, Inc., in January 1997, when he suffered an injury while pulling a wheeled cart or buggy loaded with heavy automotive parts. His initial complaint, for which he received medical treatment, consisted of a report of lower back pain. Approximately one month after the accident, the medical records in evidence indicate that Arendale expanded his complaints to include pain in his upper back, neck, and shoulders.
¶ 3. Thereafter, Arendale received extensive medical treatment from a number of different physicians. Essentially all of the treatment related to attempts to alleviate his complaints of pain in his neck and shoulders. Arendale ultimately underwent shoulder surgery for ligament and cartilage repair, after which he was released to return to work without restrictions. Aren-dale continued to report persistent pain that he contended rendered him unable to perform the duties of his employment, even after his employer shifted him to lighter duties as an accommodation to his complaints. Despite a persistent inability of most of the treating physicians to discover any objective evidence of permanent injury, Arendale continued to complain of pain in his shoulders, especially when doing physical tasks requiring overhead work. The treating physicians offered opinions suggesting varying degrees of permanent medical impairment, some of which gave an impairment rating to both of Arendale’s arms. The Commission’s findings of fact, at one point, state that the “preponderance of the evidence indicates that on January 15, 1997, [Arendale] sustained injuries to his Tight and left shoulders which arose out of and in the course of employment....” Later in the findings of fact, the Commission stated that Aren-dale had suffered “permanent medical impairments to his back, neck, and upper extremities because of the work-connected injury .... ” (emphasis added).
¶ 4. In determining the level of compensation due Arendale, the Commission limited its consideration to calculating his loss of wage-earning capacity and did not award any scheduled member benefits related to loss of use of his arms.
II.
Discussion
¶ 5. Arendale contends that, because the Commission determined that he had suffered permanent medical impairment to a scheduled member, the Commission erred as a matter of law in failing to base his compensation on the “scheduled member” provisions of Section 71-3-17(c) of the Mississippi Code. Injuries to scheduled members causing permanent loss of use result in an award of compensation that is unaffected by the impact of those injuries on the claimant’s general capacity to earn wages. Miss.Code Ann. § 71-3-17(c)(22) (Rev.2000); McCarty Farms, Inc. v. Banks, 773 So.2d 380, 387(¶ 32) (Miss.Ct.App.2000). Rather, the measure of compensation for a scheduled member injury is the greater of the percentage of the functional loss of use (generally dependent on medical proof) or industrial loss of use (which factors in the effect of the functional loss on the ability of the claimant to perform the customary acts of his usual employment). Banks, 773 So.2d at 386(¶ 26).
¶ 6. Arendale advances the proposition that the finding- of permanent disability to his upper extremities requires that he be *451 compensated for a scheduled member injury. He argues that his case presents a pure question of law, as to which this Court applies a de novo standard of review. Entergy Mississippi, Inc. v. Burdette Gin Co., 726 So.2d 1202, 1204-05(¶ 5) (Miss.1998).
¶ 7. There is authority for the proposition that, in determining the proper measure of compensation, it is the manner in which the injury manifests itself rather than the particular point of injury on the body that determines how compensation is determined. In Walters Bros. Builders v. Loomis, the claimant had struck his shoulder when he fell from a ladder but the Commission determined that the only effect of the injury appeared to be inflammation of tendons associated with the claimant’s biceps. Walters Bros. Builders v. Loomis, 187 So.2d 586, 589 (Miss.1966). On those facts, the supreme court said that “the better rule” required looking to the result of the injury rather than the point of impact and concluded that the Commission had properly determined the claimant’s level of compensation as a scheduled member claim. Id. A similar result was reached in Richey v. City of Tupelo, when the court concluded that the claimant “sustained an injury to the shoulder with functional loss affecting only the right arm.” Richey v. City of Tupelo, 361 So.2d 995, 997 (Miss.1978).
¶ 8. Those cases, and the reasoning supporting the result, appear distinguishable from this case. Here, there was no proof indicating some identifiable medical problem with either of Arendale’s arms. Instead, his complaints and most of the medical treatment related to upper body and neck pain. Certainly, pain arising in those parts of the body when a person is engaged in lifting activities or other work-related use of the arms may indirectly limit the claimant’s ability to use his arms, if for no other reason than to avoid subjecting himself to the pain symptoms. However, the mere fact that Arendale’s use of his upper extremities in certain ways acts as a triggering mechanism for the disabling pain he experiences in his neck, shoulders, and upper back does not, in our view, transform his claim into a scheduled member injury. There is substantial evidence in the record that would support the factual conclusion that the symptoms of pain that Arendale contends are disabling manifest themselves in the neck and shoulder area. That appears to be a fair analysis of the conclusion drawn by the Commission after having heard the evidence, although there is some measure of uncertainty based on the Commission’s findings of fact previously quoted. When there is substantial evidence in the record to support the Commission’s determination of the facts, this Court’s obligation is to affirm notwithstanding the fact that there may be other evidence suggesting an alternate interpretation of what the proof shows. Dulaney v. National Pizza Co., 733 So.2d 301, 304(¶ 6) (Miss.Ct.App.1998). Based on a fair reading of the entire decision of the Commission and based on our limited standard of review as to such matters, we do not find merit in Arendale’s first issue since there is no proof that Arendale’s physical complaints related directly to his arms rather than his neck and shoulders.
III.
Issue Two: The Percentage of Loss of Wage-Earning Capacity
¶ 9. Arendale also argues — apparently as an alternative theory — that the Commission erred in assessing his percentage of loss of wage-earning capacity at only twenty percent.
*452 ¶ 10. When the disabling injury is to the body as a whole, rather than one of the claimant’s scheduled members, the only available measure for computing allowable benefits to consider is the claimant’s overall diminished wage-earning capacity under Section 71-3-17(c)(25). Miss.Code Ann. § 71-3-17(c)(25) (Rev.2000). In this case, the Commission determined that Ar-endale had been released to return to work and that his employer had made adjustments in his work duties to accommodate his post-injury restrictions so that he had suffered no actual loss of wages. However, based largely on Arendale’s own testimony regarding his restricted physical abilities, the Commission concluded that Arendale had suffered a twenty percent loss of wage earning capacity arising out of the January 1997 industrial accident.
¶ 11. Arendale does not contend that the evidence directly relating to diminished wage-earning capacity showed that a higher percentage of disability was warranted. Rather, his argument returns to the theme of his earlier issue, ie., that he has, in fact, suffered scheduled member injuries to both upper extremities. In this second version of his argument, Arendale extends the underlying premise further to contend that the proof shows that, no matter what percentage of functional disability the medical proof established, he has suffered a one hundred percent industrial disability to both extremities because he was unable to return to the duties he was performing at the time of injury. That, according to his argument, entitles him to maximum total disability benefits under Section 71-3-17(a).
¶ 12. Because this argument depends for its validity on the foundational premise that this is a scheduled member ease and because we have already determined that it is not, this issue is without merit.
¶ 13. THE JUDGMENT OF THE CIRCUIT COURT OF LEFLORE COUNTY IS AFFIRMED. COSTS OF THE APPEAL ARE ASSESSED TO THE APPELLANT.
KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, IRVING, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR.