# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2019-CT-00913-SCT

*GAMMA HEALTHCARE INC. AND EMPLOYERS
INSURANCE COMPANY OF WAUSAU*

*v.*

*ESTATE OF SHARON BURRELL GRANTHAM*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 02/27/2019 |
| TRIBUNAL FROM WHICH APPEALED: | MISSISSIPPI WORKERS' COMPENSATION COMMISSION |
| ATTORNEYS FOR APPELLANTS: | M. REED MARTZ <br> D. BETH SMITH |
| ATTORNEY FOR APPELLEE: | STEVEN HISER FUNDERBURG |
| NATURE OF THE CASE: | CIVIL - WORKERS' COMPENSATION |
| DISPOSITION: | THE JUDGMENT OF THE COURT OF APPEALS IS AFFIRMED. AS TO THE DECISION OF THE MISSISSIPPI WORKERS' COMPENSATION COMMISSION: APPEAL DISMISSED IN PART AS MOOT; ORDERS OF THE WORKERS' COMPENSATION COMMISSION VACATED IN PART; ORDER IMPOSING SANCTIONS REVERSED AND RENDERED - 03/03/2022 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**KITCHENS, PRESIDING JUSTICE, FOR THE COURT:**

¶1. The Workers' Compensation Commission and an Administrative Judge (AJ) had

ordered Gamma Healthcare and Employers Insurance Company of Wausau

(Employer/Carrier) to replace Sharon Burrell Grantham's septic and HVAC systems and to

pay for insurance on a handicapped-accessible van. The Commission, *sua sponte*, issued a separate order sanctioning the Employer/Carrier for causing an unnecessary delay by appealing the AJ's order to the full Commission without reasonable grounds. The Employer/Carrier appealed. While this case was pending before the Court of Appeals, Sharon Grantham died. Thereafter, the Court of Appeals dismissed the case as moot. The Court of Appeals applied the general rule followed by federal courts by vacating the outstanding Commission and AJ orders. The appeals court reversed and rendered the Commission's sanctions order against the Employer/Carrier, determining that the Commission had abused its discretion by its imposition of the sanction, reasoning that the Employer/Carrier had a reasonable legal argument for its appeal. Grantham's estate filed a petition for a writ of *certiorari*, which this Court granted.

¶2.     This Court has held

> Cases in which an actual controversy existed at trial but the controversy has expired at the time of review, become moot. We have held that the review procedure should not be allowed for the purpose of settling abstract or academic questions, and that we have no power to issue advisory opinions. ***Insured Sav. & Loan Ass'n v. State*** [***ex rel. Patterson***], 242 Miss. 547, 135 So. 2d 703 (1961); ***McLendon v. Laird***, 211 Miss. 662, 52 So. 2d 497 (1951); ***Van Norman v. Barney***, 199 Miss. 581, 24 So. 2d 866 (1946).

***Allred v. Webb***, 641 So. 2d 1218, 1220 (Miss. 1994) (quoting ***Monaghan v. Blue Bell, Inc.***, 393 So. 2d 466, 466-67 (Miss. 1980)). "Thus, standing must exist when litigation is commenced and must continue through all subsequent stages of litigation, or the case will become moot." ***Frisby v. City of Gulfport (In re City of Biloxi)***, 113 So. 3d 565, 572 (Miss.

2

2013).[1] "A case is moot if 'a judgment on the merits . . . would be of no practical benefit to the plaintiff or detriment to the defendant.'" *Id.* (quoting *Gartrell v. Gartrell*, 936 So. 2d 915, 916 (Miss. 2006)). "If an appeal involves questions about rights which no longer exist, the appeal will be dismissed." *Gartrell*, 936 So. 2d at 916 (citing *McDaniel v. Hurt*, 92 Miss. 197, 41 So. 381, 381 (1906)). In this case, Grantham's estate "concede[d] that Grantham's death abates the Employer/Carrier's obligations to replace the septic and HVAC system and pay insurance premiums." *Gamma Healthcare Inc. v. Est. of Grantham*, No. 2019-WC-00913-COA, 2020 WL 7040956, at *1 (Miss. Ct. App. Dec. 1, 2020). In light of Grantham's untimely death and the concession by her estate, we agree with the Court of Appeals that this case is moot.

¶3.     However, the main issue is not whether the case is moot. Rather it is whether the Court of Appeals erred by vacating the Commission's and the AJ's valid orders to replace the septic and HVAC systems in a case that became moot on appeal due to circumstances beyond the control of the parties. Additionally, did the court err by following federal vacatur law instead of existing Mississippi law? These are issues of first impression. We find that the Court of Appeals did not err and that the federal *vacatur* rule is appropriate. The Commission's orders were vacated properly.

¶4.     Lastly, Grantham's estate challenges the appeals court's overturning of the

_____

[1] "Mootness has been called 'the doctrine of standing set in a time frame: the requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).'" *In re City of Biloxi*, 113 So. 3d at 572 n.4 (internal quotation marks omitted) (quoting 1 Jeffrey Jackson, *Mississippi Civil Procedure* § 1:28 (2013)).

Commission's sanctions award. We affirm the Court of Appeals' reversing and rendering of the Commission's sanctions award.

## STATEMENT OF THE FACTS

¶5.     The Court of Appeals related the facts as follows:

In October 2015, Grantham experienced permanent paraplegia as a result of a work-related automobile accident. The Employer/Carrier reported the injury and began paying workers' compensation benefits and providing medical treatment.

Several months later, disputes arose between Grantham and the Employer/Carrier regarding the scope and nature of necessary modifications to Grantham's home. In August 2016, Grantham filed a petition to controvert with the Workers' Compensation Commission and a motion to compel the Employer/Carrier to make necessary modifications to her home. In February 2017, Grantham filed a motion to compel the Employer/Carrier to provide a wheelchair-accessible van. In March 2017, the AJ ordered the Employer/Carrier to make necessary home modifications, provide Grantham with a wheelchair-accessible van, and pay "for property/collision insurance premiums associated with the enhanced cost of the handicapped vehicle." The AJ later entered an order clarifying that Grantham would "be responsible for premiums associated with liability and/or uninsured motorist coverage and that the [Employer/Carrier would] be responsible for insurance premiums associated with property/collision coverage for the vehicle." The Employer/Carrier filed a petition for full Commission review of the AJ's ruling on insurance. However, the Commission declined to review the AJ's interlocutory ruling and dismissed the petition without prejudice.

In April 2017, Grantham filed a motion asking the AJ to appoint a "neutral case manager" to assist with recurring disagreements between the parties regarding home modifications. Grantham argued that "a neutral case manager appointed by the Commission to assess, observe and make recommendations to the [AJ] would be in the best interest of [Grantham] and would promote smooth administration of this claim." In response, Employer/Carrier argued that the Workers' Compensation Law did not authorize the AJ to appoint a neutral case manager and that a neutral case manager was "not needed." In June 2017, the AJ granted Grantham's motion and appointed Barbara Oltremari, a registered nurse, "to perform nurse case management services limited to . . . an inspection of [Grantham's] residence

4

to include home modifications and to provide the parties and the [AJ] with a report and opinions as to whether the home modifications are complete, reasonable and adequate for [Grantham's] health and safety." Oltremari performed her inspection and submitted her report in July 2017.

In November 2017, Grantham filed a motion to compel the Employer/Carrier to pay for various home modifications that Oltremari had recommended. Among other things, Grantham asked the AJ to compel the Employer/Carrier "to have [her septic and HVAC] systems evaluated and repaired, if necessary." The AJ granted Grantham's motion.

Evaluations showed that Grantham's "septic system [was] not working at all" and needed to be replaced and that her HVAC system was "extremely old" and also needed to be replaced. The HVAC system failed completely and ceased working after the evaluation was performed. In July 2018, Grantham filed a motion to compel the Employer/Carrier to replace her septic and HVAC systems.

In response, the Employer/Carrier argued that the evaluation of the septic system showed that the system's failure was the result of a myriad of "longstanding" issues that predated and were unrelated to Grantham's injury and were "not the responsibility of the [Employer/Carrier] to remedy." Similarly, the Employer/Carrier argued that the evaluation of the HVAC system showed that the system was already "two to four years beyond its life expectancy at the time of [Grantham's] accident" and revealed "numerous other problems with the system, most of which [were] attributable to lack of maintenance." They argued that the failure of the HVAC system was unrelated to Grantham's work-related injury and was "not the responsibility of the [Employer/Carrier] to remedy."

. . . In October 2018, the AJ directed the nurse case manager to conduct a new inspection and provide an updated report on the condition of Grantham's home. In November 2018, after considering the nurse case manager's updated report, the AJ ordered the Employer/Carrier to, among other things, replace Grantham's septic and HVAC systems.

The Employer/Carrier filed a petition for full Commission review of the AJ's order. As relevant to this appeal, the Employer/Carrier argued that the AJ's order to replace Grantham's septic and HVAC systems was "beyond the [Employer/Carrier's] obligations [under] Mississippi Code Annotated [section] 71-3-15(1)." The Employer/Carrier also "reurge[d]" its prior petition for review regarding insurance for Grantham's van. Finally, the Employer/Carrier

5

argued that the AJ's reliance on the opinions of a nurse case manager was an abuse of discretion and a due process violation. In a separate motion, the Employer/Carrier asked the Commission to admit additional evidence: a rebuttal report from "Accessible Housing Services."

*Id.*, at *1-2 (alterations in original) (footnote omitted).

¶6.     On February 27, 2019, the Commission entered an order affirming the administrative judge's findings and denying the Employer/Carrier's motion. *Id.* In a separate, *sua sponte* order, the Commission sanctioned the Employer/Carrier "pursuant to its authority in [Mississippi Code Annotated Section] 71-3-59 that the Employer/Carrier shall pay reasonable attorney's fees in the amount of $200.00 per hour for a total of 20 hours as a result of instituting an appeal without reasonable grounds and causing unnecessary delay in this matter." The Commission determined that the Employer/Carrier's appeal reviewing the AJ's order to replace the septic and HVAC systems was "'without reasonable grounds' because there was no 'medical evidence' to dispute that the nature of Grantham's injuries required her to have working septic and HVAC systems." *Id.* at *3.

¶7.     "After the Commission entered a final judgment in the case, the Employer/Carrier filed a notice of appeal." *Id.* The case was assigned to the Court of Appeals. Grantham died on September 25, 2019, while her appeal was pending before the Court of Appeals. Order, ***Gamma Healthcare Inc. v. Grantham***, No. 2019-WC-00913-COA (Miss. Ct. App. Jan. 17, 2020). The Court of Appeals "granted Grantham's Estate's motion to be substituted as the appellee." ***Gamma Healthcare***, 2020 WL 7040956, at * 3. The court "then ordered the parties to file supplemental briefs addressing the effect, if any, of Grantham's death on the appeal, including whether the appeal was moot and whether any of the Commission's order

6

should be vacated." *Id.*

¶8. The Court of Appeals noted that "Grantham's Estate expressly concede[d] that due to Grantham's death, the Employer/Carrier are no longer obligated to replace the septic and HVAC systems or pay for insurance on the van." *Id.* at \*4. As such, the court determined that the appeal was moot without an exception and should be dismissed in part as moot. *Id.*

¶9. After determining that the appeal was moot in part, the court addressed the question of "whether the Commission's orders should be vacated to the extent that they are now moot." *Id.* at \*5. Recognizing that this was an issue of first impression, the Court of Appeals looked to the "general rule in federal court" and "vacate[d] the Commission's and the [administrative judge]'s orders to the extent they require the Employer/Carrier to replace the septic and HVAC systems and pay for the insurance on the van." *Id.*

¶10. The parties agreed in their appellate briefs, and the court determined, that the Commission's order that imposed a sanction upon the Employer/Carrier was not moot. *Id.* at \*3. The Court of Appeals "conclude[d] that the Employer/Carrier had a 'reasonable ground' for their appeal and that the Commission erred by finding otherwise." *Id.* at \*6. The court determined that the Employer/Carrier did have a reasonable ground to assert their appeal because "[t]he Employer/Carrier argued that [the] septic and HVAC systems were beyond the scope of relief available under the Workers' Compensation Law because neither was an 'other apparatus'[2] that was specially required by the nature of Grantham's injury."

---

[2]"The employer shall furnish such medical, surgical, and other attendance or treatment, nurse and hospital service, medicine, crutches, artificial members, and other apparatus for such period as the nature of the injury or the process of the recovery may require." Miss. Code Ann. § 71-3-15(1) (Rev. 2021).

*Id.* (quoting Miss. Code Ann. § 71-3-15(1)). Simply, "the Employer/Carrier made at least a colorable legal argument that a septic system or an HVAC system is not an 'other apparatus' specially required by the nature of Grantham's injury that it may be ordered to provide under section 71-3-15(1)." *Id.* Accordingly, the court reversed and rendered the sanctions order. *Id.*

¶11. Grantham's estate filed a petition for writ of *certiorari*, arguing that 1) "the [Mississippi Workers' Compensation Commission's] orders should not have been vacated because they were valid when entered, even if the relief afforded was mooted by the claimant's subsequent death[;]" 2) the Court of Appeals erred by not applying Mississippi case law, *Fails v. Jefferson Davis County Public School Board*, 95 So. 3d 1223 (2012), and applying federal *vacatur* law instead; 3) the Court of Appeals erred by reversing and rendering the Commission's sanctions order by "finding that the employer and carrier's unsupported denial was 'colorable[.]'" This Court granted *certiorari* to address these arguments.

## DISCUSSION

### I. The Court of Appeals did not err by applying the federal *vacatur* rule.

¶12. After determining that Grantham's death rendered the appeal moot, the Court of Appeals was left to decide "whether the Commission's orders should be vacated to the extent that they are now moot." *Gamma Healthcare*, 2020 WL 7040956, at *5. Before the Court of Appeals, Grantham's estate argued that "no orders should be vacated because the case was not moot when the Commission decided it." *Id.* Grantham's Estate argued also that "moot

8

appeals are simply dismissed—without vacating the underlying orders of the trial courts." Alternatively, "the Employer/Carrier argue[d] that it would be unfair to leave the Commission's orders in place without addressing the Employer/Carrier's legal challenges to those rulings." *Id.* at \*5.

¶13. The estate's argument relied on *Fails*, but the Court of Appeals determined that *Fails* was distinguishable from Grantham's case. *Gamma Healthcare*, 2020 WL 7040956, at \*5. We agree. In *Fails*, the decisions of the circuit court and the Court of Appeals were vacated because "the lower courts had no authority to decide the substantive merits of the issues presented" since both courts "had before them moot issues[.]" *Fails*, 95 So. 3d at 1226. Simply, the decisions "had to be vacated because the case was *already* moot when [the Court of Appeals] and the circuit court decided it." *Gamma Healthcare*, 2020 WL 7040956, at \*5 (citing *Fails*, 95 So. 3d at 1226). The separate opinion in *Gamma* contends that *Fails* is controlling precedent and that the orders of the Commission and the AJ should not be vacated because "the issues of house repairs and van insurance were not moot when the AJ and Commission heard them and, thus, they had authority to decide them." *Gamma Healthcare*, 2020 WL 7040956, at \*8 (McDonald, J., concurring in part and dissenting in part). But *Fails* does not address the issue of whether an appellate court should vacate an order that once was valid and later became moot on appeal. Though the Commission and the AJ had authority to decide the issues when they were before them, it was Grantham's subsequent death that caused the issues to become moot while the case was pending on appeal. *Fails* does not address this kind of scenario or provide a legal analysis on how to proceed. *Fails* says only

9

that when a lower court lacked authority to enter a judgment in an already-moot case and the case reached an appellate court, that appellate court should vacate the decision of the lower court. *Fails*, 95 So. 3d at 1226. Despite the contentions of Grantham's estate and the Court of Appeals' separate opinion in *Gamma Healthcare*, *Fails* is not controlling precedent for Grantham's case.

¶14.     In its *certiorari* petition, Grantham's estate posited that "[i]f *Fails* is not controlling authority . . . then [this Court] should clarify Mississippi's vacatur standard." The Court of Appeals decided the best solution was to follow the general rule that applies in federal court, which "is that a lower court's judgment 'must be' vacated when appellate 'review is . . . prevented through happenstance—that is to say, where a controversy presented for review has become moot due to circumstances unattributable to any of the parties.'" *Gamma Healthcare*, 2020 WL 7040956, at *5 (quoting *U.S. Bancorp Mortg. Co. v. Bonner Mall P'Ship*, 513 U.S. 18, 23, 115 S. Ct. 386, 130 L. Ed. 2d 233 (1994)). We now address whether the Court of Appeals erred by applying the federal *vacatur* standard.

¶15.     The United States Supreme Court has held that

> When a civil case becomes moot pending appellate adjudication, "[t]he established practice . . . in the federal system . . . is *to reverse or vacate* the judgment below and remand with a direction to dismiss." *United States v. Munsingwear, Inc.*, 340 U.S. 36, 39, 71 S. Ct. 104, 106, 95 L. Ed. 36 (1950). . . . *Vacatur is in order when mootness occurs through happenstance—circumstance not attributable to the parties—or, . . . , the "unilateral action of the party who prevailed in the lower court."* **U.S. Bancorp Mortgage Co.**, 513 U.S., at 23, 115 S. Ct., at 390; cf. *id.*, at 29, 115 S. Ct., at 393 ("mootness by reason of settlement [ordinarily] does not justify vacatur of a judgment under review").

*Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 71-72, 117 S. Ct. 1055, 1071, 137 L. Ed.

2d 170 (1997) (emphasis added) (first, second, and fifth alterations in original). "Because this practice is rooted in equity, the decision whether to vacate turns on 'the conditions and circumstances of the particular case.'" *Azar v. Garza*, 138 S. Ct. 1790, 1792, 201 L. Ed. 2d 118 (2018) (quoting *United States v. Hamburg-Amerikanische Packetfahrt-Actien Gesellschaft*, 239 U.S. 466, 478, 36 S. Ct. 212, 60 L. Ed. 387 (1916)). The Supreme Court also has held that

> The point of vacatur is to prevent an unreviewable decision "from spawning any legal consequences," so that no party is harmed by what we have called a "preliminary" adjudication. *Munsingwear*, 340 U.S., at 40-41, 71 S. Ct. 104. . . . When happenstance prevents that review from occurring, the normal rule should apply: Vacatur then rightly "strips the decision below of its binding effect," *Deakins v. Monaghan*, 484 U.S. 193, 200, 108 S. Ct. 523, 98 L. Ed. 2d 529 (1988), and "clears the path for future relitigation," *Munsingwear*, 340 U.S., at 40, 71 S. Ct. 104.

*Camreta v. Greene*, 563 U.S. 692, 713, 131 S. Ct. 2020, 2035, 179 L. Ed. 2d 1118 (2011).

¶16. "In a case of first impression Mississippi Courts look to other jurisdictions in determining the matter." *Forrest Gen. Hosp. v. Upton*, 240 So. 3d 410, 418 (Miss. 2018) (internal quotation marks omitted) (quoting *Sheppard v. Miss. State Highway Patrol*, 693 So. 2d 1326, 1329 (Miss. 1997)). Other jurisdictions have recognized the federal *vacatur* standard. *See* *Tyson Foods, Inc. v. Aetos Corp.*, 818 A.2d 145, 148 (Del. 2003); *Babies Right Start, Inc. v. Ga. Dep't of Pub. Health*, 748 S.E.2d 404, 407 (Ga. 2013); *Felzak v. Hruby*, 876 N.E.2d 650, 658-59 (Ill. 2007); *Byerly v. S.C. Nat'l Bank Corp.*, 438 S.E.2d 233, 233 (S.C. 1993); *In re Jessica M.*, 738 A.2d 1087, 1088 (Conn. 1999); *Bd. of Supervisors of Fairfax Cnty. v. Ratcliff*, 842 S.E.2d 377, 379 (Va. 2020).

¶17. The dissent believes that vacatur of an order is erroneous because it "allows for the

11

vacatur of a valid order without finding of any error." Diss. Op. ¶ 79. Rather the dissent would dismiss the orders for mootness because the orders were valid when entered and no error has been found. *See* Diss. Op. ¶¶ 55, 74, 79. But this would be tantamount to this Court's affirmance of the Commission's award of the benefits to Grantham, which is a question that is not before us. When happenstance occurs, such as a death of a party, vacatur allows fairness to both parties by eliminating the binding effect of the lower court and allows for future relitigation regardless of a finding of error. *Camreta*, 563 U.S. 692.

¶18.　Additionally, the Court of Appeals found that "there are practical reasons to vacate the Commission's orders and the prior orders of the AJ to the extent that they require Employer/Carrier to replace the septic and HVAC systems and pay for insurance." *Gamma Healthcare*, 2020 WL 7040956, at \*5. Notwithstanding the concession of Grantham's estate that the Employer/Carrier is no longer obligated to comply with the orders, the "Employer/Carrier remain[s] under valid and binding orders" until those orders are vacated. *Id.*

¶19.　Therefore, we find that the application of the federal *vacatur* rule is appropriate here and that the Court of Appeals did not err. *See* ***U.S. Bancorp Mortg. Co.***, 513 U.S. 18. We affirm the Court of Appeals' decision to "vacate the Commission's and the AJ's orders to the extent they require the Employer/Carrier to replace the septic and HVAC systems and pay for insurance to the van." *Gamma Healthcare*, 2020 WL 7040956, at \*5.

**II.　The Court of Appeals did not err by reversing and rendering the Commission's sanctions order.**

¶20.　We agree with the Court of Appeals that this issue was not mooted by Sharon

Grantham's demise.[3] *See **Gamma Healthcare***, 2020 WL 7040956, at *5. The Commission sanctioned the Employer/Carrier, *sua sponte*, "for appealing the AJ's order requiring them to replace Grantham's septic and HVAC systems." ***Id.*** at *6. The Commission justified issuing its sanction award by relying on Mississippi case law[4] to determine that "the Employer/Carrier institut[ed] an appeal to the Full Commission without a medical opinion or credible evidence to support their arguments [and this] constitutes an appeal without reasonable grounds thus causing unreasonable delay." The Court of Appeals reversed and rendered the Commission's sanctions order because "the Employer/Carrier made at least a colorable legal argument that a septic system or an HVAC system is not an 'other apparatus' specifically required by the nature of Grantham's injury that it may be ordered to provide under [S]ection 71-3-15(1)." ***Gamma Healthcare***, 2020 WL 7040956, at *6.

¶21.    In its *certiorari* petition, Grantham's estate argues that

> [t]he decision of the Court of Appeals below undermines the workers' compensation law and allows an employer and carrier that denied medical benefits to a paralyzed worker - without any evidence to support the denial - to not only avoid the obligation to provide the benefits (because of the claimant's unfortunate death during the appeal) but also to escape the very existence of adjudications against them below and the sanctions entered by the [Mississippi Workers' Compensation Commission] for the delay caused by the unsupported denial/defense.

---

[3]To clarify, the *vacatur* doctrine does not apply to the sanctions order because it was a separate order that included a separate claim between the Commission and the Employer/Carrier, not between Grantham and the Employer/Carrier. Specifically, the sanctions order was separate and apart from Grantham's workers' compensation claim, and the sanctions claim survived Grantham's death. Therefore, the sanctions order remains valid, meaning the *vacatur* doctrine is inapplicable to that order.

[4]***Hardaway Co. v. Bradley***, 887 So. 2d 793, 797 (Miss. 2004) (citing ***Spann v. Wal-Mart Stores, Inc.***, 700 So. 2d 308 (Miss. 1997)).

¶22. The Commission issued the sanctions award pursuant to its authority found in Mississippi Code Section 71-3-59(2), which provides:

> If the full commission determines that proceedings in respect to a claim have been instituted, continued or delayed, including by way of appeal to the commission, without reasonable ground, the full commission shall require the party who has so instituted, continued or delayed such proceedings or the attorney advising such party, or both, to pay the reasonable expenses, including attorney's fees, caused by such institution, continuance or delay to the opposing party.

Miss. Code Ann. § 71-3-59(2) (Rev. 2021). The Court of Appeals in **Gamma Healthcare** reversed and rendered the Commission's sanctions award by relying on previous Court of Appeals case law, which states that "the Commission may not sanction a party or attorney for an argument that has 'at least a colorable basis in the law.'" **Gamma Healthcare**, 2020 WL 7040956, at \*6 (internal quotation marks omitted) (quoting **Wright v. Turan-Foley Motors Inc.**, 269 So. 3d 160, 174 (Miss. Ct. App. 2018)). The Court of Appeals explained in **Minor v. RGT Management Inc.** that its "use of the phrase 'colorable basis in law' was in reference to use of that phrase in an analogous context where the Mississippi Supreme Court was addressing the impositions of sanctions under Mississippi Rule of Civil Procedure 11 for alleged frivolous pleadings." **Minor v. RGT Mgt., Inc.**, 271 So. 3d 644, 649 n.10 (Miss. Ct. App. 2018) (citing **Est. of McLemore v. McLemore**, 63 So. 3d 468, 469 (Miss. 2011)). We agree and find that Section 73-3-59(2) sanctions are analogous to Mississippi Rule of Civil Procedure 11. *See* Miss. R. Civ. P. 11(b); *see also* Miss. Code Ann. § 11-55-5 (Rev. 2019) ("Mississippi Litigation Accountability Act").

¶23. "This Court has held that pleadings found to be justiciable, viable, or colorable are not

for the purpose of harassment or delay; thus, sanctions are inappropriate." *McLemore*, 63 So. 3d at 490 (citing *In re Spencer*, 985 So. 2d 330, 339 (Miss. 2008)). In its Petition for Full Commission Review, the Employer/Carrier asserted the following argument for consideration by the Commission:

> Replacing and/or repairing Claimant's home's septic system, heating system, and cooling system which were undisputedly beyond their expected service life even before Claimant's injury, and which are not specially required by "the nature of the injury or the process of recovery," is beyond the obligations set out in Mississippi Code Annotated § 71-3-15(1). The need for the repair or replacement of these systems is completely unrelated to treatment of Claimant's injury per the uncontested inspection reports and Claimant produced no evidence that her injury in any way increased or changed her need for either such system[.]

The Employer/Carrier's argument can be simplified: Replacing/repairing Grantham's septic and HVAC systems are not the type of treatments or process of recovery covered under the workers' compensation statute, specifically, Section 71-3-15(1); therefore, the Employer/Carrier should not be held responsible. While we do not adjudicate whether the argument asserted by the Employment/Carrier would or would not have succeed on its merits, we do find that it is a colorable position. It is colorable because the argument has some hope or chance of success since there is no rule of law that prevents it from being asserted. *See Garner v. Smith*, 277 So. 3d 536, 541 (Miss. 2019) ("A claim is frivolous when 'objectively speaking, the pleader or movant has no hope of success.'" (internal quotation marks omitted) (quoting *Sullivan v. Maddox*, 122 So. 3d 75, 85 (Miss. Ct. App. 2013))).

¶24. The estate argues that this allows parties to "escape" sanctions and that the Commission's authority to sanction "has lost any deterrent effect." We disagree. The

Employer/Carrier are not escaping sanctions; rather, as pointed out by the Court of Appeals, "[p]arties should not be sanctioned for making reasonable legal arguments in support of their positions." *Gamma Healthcare*, 2020 WL 7040956, at *7. Additionally, the Commission has suffered no loss of deterrent effect as the Commission still has the authority to sanction parties under Section 71-3-59(2) for any non-viable, non-colorable claims asserted without reasonable grounds that instituted, continued or delayed the proceeding, *i.e.*, appeal.

¶25. Because the Employer/Carrier asserted a viable argument before the Commission, their appeal could not have been instituted without reasonable grounds. Therefore, we affirm the Court of Appeals' decision to reverse and render the Commission's sanctions order.

## CONCLUSION

¶26. We affirm the decision of the Court of Appeals. The Court of Appeals did not err by applying the applicable federal standard and "vacat[ing] the Commission's and the AJ's orders to the extent they require the Employer/Carrier to replace the septic and HVAC systems and pay for insurance to the van." *Gamma Healthcare*, 2020 WL 7040959, at *5. Additionally, we find that the Court of Appeals did not err by reversing and rendering the Commission's sanctions order.

¶27. **THE JUDGMENT OF THE COURT OF APPEALS IS AFFIRMED. AS TO THE DECISION OF THE MISSISSIPPI WORKERS' COMPENSATION COMMISSION: APPEAL DISMISSED IN PART AS MOOT; ORDERS OF THE WORKERS' COMPENSATION COMMISSION VACATED IN PART; ORDER IMPOSING SANCTIONS REVERSED AND RENDERED.**

**KING, P.J., MAXWELL, BEAM AND CHAMBERLIN, JJ., CONCUR. RANDOLPH, C.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY COLEMAN, ISHEE AND GRIFFIS, JJ.**

16

**RANDOLPH, CHIEF JUSTICE, DISSENTING:**

¶28.    A work-related car accident on October 27, 2015, rendered Sharon Grantham, a forty-one-year-old, home-health supervisor, a paraplegic. Prior to her injury, Grantham was employed by Gamma Healthcare, Inc., as a supervisor earning $35,000 a year. Her employer was insured by Employers Insurance Company of Wausau (collectively, "the Employer/Carrier"). She had been a certified medical assistant for fourteen years and a phlebotomist before her catastrophic injury. She supervised ten people, who would go into nursing homes for blood work. She scheduled this activity for more than fifty nursing homes.

¶29.    At the time of her accident, Grantham had been married for twenty years and had five children, all of whom were still living at home. She and her husband had previously renovated their home of fourteen years to add an additional bedroom.

¶30.    Grantham died less than four years later, on September 25, 2019, during the pendency of this appeal,[5] without ever receiving the full benefits granted to her by the Workers' Compensation Commission in its orders. The Employer/Carrier persistently contested that medically necessary modifications to Grantham's home were warranted and were within its obligations under the workers' compensation law. At no time, despite numerous proceedings, did the Employer/Carrier offer any lay or expert proof or evidence to rebut the medical-necessity testimony from two physicians, an **independent** nurse manager, and an occupational therapist or rebut the argument that her work-related injuries required the requested modifications. There was no error in the Commission's decision to award sanctions

---

[5] The Court of Appeals granted the estate's Motion for Substitution.

17

due to the Employer/Carrier's appealing an order based on overwhelming evidence, absent any disputed medical opinions or any other evidence to support their refusal.

¶31. After Grantham died and her estate was allowed to substitute by order of the Court of Appeals, the parties agreed that the portions of the Commission's order regarding modifications of her home and insuring her van were mooted. Rather than dismissing those claims on appeal, the Court of Appeals took a rather unorthodox approach and vacated those portions of the Commission's orders, without the request of anyone. While the majority opines that the Court of Appeals applied a "general" rule of federal vacatur, Maj. Op. ¶ 9, I find no cases in which a federal court has vacated a lawful order that remained in dispute, as does the one in the case *sub judice*.

### *Facts*

¶32. The majority **adopted in part** the Court of Appeals' recitation of the facts and procedural history. I suggest a more complete history not only justifies the Commission's decisions, but the record supports it. After all, the Commission was the ultimate finder of fact in today's case. *See **Seals v. Pearl River Resort**,* 301 So. 3d 585, 587 (Miss. 2020) (citing ***Jones v. Miss. Baptist Health Sys., Inc.**,* 294 So. 3d 76, 80 (Miss. 2020)). The following comprehensive facts clearly illustrate the multiple delays[6] occasioned by the Employer/Carrier's actions and support the Commission's ultimate decisions.

¶33. After Grantham was released from a care facility after extensive rehabilitation, she underwent an independent medical evaluation (IME). The record reveals that Grantham

---

[6] From the date of her accident until the Commission's order, **1219** days elapsed.

18

required twenty-four-hour care and was further impacted by the fact that she did not have an accessible dwelling or vehicle. One physician testified that

> Ms. Grantham has the capacity to be more independent than she is at this time. She most likely could be trained to drive a wheelchair van and to be alone for periods of time during the day. She should eventually be almost independent with self-care and mobility.

The IME report concluded that Grantham needed a hospital bed with a special mattress, manual and power wheelchairs, an accessible shower, a completely accessible home, bathroom, and kitchen, and a customized accessible van. Following the IME, the Employer/Carrier submitted its plans[7] and offered Grantham costs for minimal home modifications on August 5, 2016, more than nine months after the accident.

¶34. Although the contractor selected by the Employer/Carrier performed minimal changes, they failed to fully address the recommendations of the IME. *See* ¶ 33. Grantham was constrained to file her **first** Motion to Compel Medical Treatment, arguing that the Employer/Carrier's modification plans were insufficient in light of the IME's

---

[7] The Employer/Carrier received bids from three companies. The first company did not itemize any amounts in its proposal. Ironically, it provided no documentation of insurance on its workers. The second bid, which was the highest bid, provided an itemization of costs, accounted for general expenses, including taxes and insurance, in the amount of $9,840, and included documentation of being fully insured. The third and lowest bid, which was selected by the Employer/Carrier for the project, provided an itemization of costs, but did not account for general expenses, including insurance. No documentation of insurance for its workers was provided, nor were any references provided, as was done by the other two companies. When reviewing the itemized costs of the lowest and highest bids, the bids are not significantly different, especially considering that only the highest bidder took into account taxes that would have to be paid. The largest differences were the kitchen ($4,000 compared to $450 by the contractor selected by the Employer/Carrier) and the laundry room ($7,000 compared to $1,500). If the bids were compared removing the general expenses of taxes and insurance from the high bid, the bids only differ by approximately $3600.

recommendations. The Employer/Carrier responded to her motion, not by arguing lack of medical necessity, but rather arguing that it had submitted a proposal by an independent company, Accessible Housing from Baltimore, Maryland. The Employer/Carrier argued that Grantham failed to explain why the proposed modifications were insufficient. However, on the face of the bid overview provided by the Employer/Carrier, the insufficiencies are quite obvious. The low bidder did not account for taxes, insurance, or other general expenses including overhead and profit. Additionally, the low bidder only allotted $450 to modify the kitchen of Grantham, a wheelchair-bound paraplegic. The Employer/Carrier also requested that Grantham sign a contract with the chosen contractor obligating Grantham to accept responsibility for any additional costs not previously contracted. Grantham amended her motion to include then-current medical records from her treating physician. A hearing was set for October 20, 2016. Nothing in the record indicates whether this scheduled hearing was conducted.

¶35.    One year and four months after being rendered a paraplegic, Grantham was forced to file a **Second** Amended Motion to Compel Medical Treatment on February 17, 2017, averring that "[t]o date, [she] has not received home modifications, has not received attendant care (other than that voluntarily provided by [her] daughter) and has not been provided with a handicapped accessible vehicle of any kind." After filing her original motion to compel, Grantham suffered a broken foot and required additional, significant medical treatment, including surgery. The Employer/Carrier responded to the motion, denying all averments and incorporating its original response and arguments.  The motion was noticed

for hearing for March 9, 2017. Again, it is unclear from the record whether this hearing occurred.

¶36. The administrative judge entered an order on March 21, 2017, seven months after Grantham's original motion to compel was filed. The AJ found that "[n]o home modifications have been performed at the claimant's residence." The AJ ordered the Employer/Carrier to provide: 1) handicapped-accessible housing while the home modifications were performed; 2) a power wheelchair as Grantham's power wheelchair had been out for repairs for several weeks, and she did not have a replacement; 3) a handicapped-accessible van that included an integral lift system;[8] and 4) reimbursement for doctor recommended attendant care.[9]

¶37. Grantham also moved for the appointment of a neutral case manager "to assess, observe, and make recommendations to the Administrative Judge . . . [and] promote smooth administration of this claim." The Employer/Carrier objected to such an appointment, arguing Mississippi workers' compensation law did not provide for the requested relief. The Employer/Carrier also argued that its independent expert, Accessible Housing, had already been consulted. Barbara Oltremari, B.S.N., R.N., C.C.M., L.N.C.C., was subsequently appointed

---

[8] The Employer/Carrier was responsible for the taxes and title, first year registration, warranty, and insurance premiums associated with enhanced costs of a handicapped-accessible vehicle. Grantham was responsible for the registration after the first year, any extended warranty, and liability and/or uninsured motorist insurance premiums.

[9] The AJ entered an amended order on May 1, 2017, clarifying its ruling on insurance to find that the Employer/Carrier was responsible for property and collision coverage.

to perform nurse case management services limited to, at this time, an inspection of the claimant's residence to include home modifications and to provide the parties and the Administrative Judge with a report and opinions as to whether the home modifications are complete, reasonable and adequate for the claimant's health and safety.

¶38. On May 4, 2017, the Employer/Carrier petitioned the Commission to review the March 21, 2017 and May 1, 2017 orders. In response to the March order, the Employer/Carrier finally purchased the wheelchair-bound claimant a handicapped-accessible van. The Employer/Carrier appealed the AJ's finding as to insurance only, requesting that the Commission order Grantham to be allocated all costs of insurance on the vehicle as it was titled in her name.

¶39. The Commission issued an order on June 9, 2017, dismissing the petition as it was interlocutory in nature. The case was remanded to the AJ for further proceedings necessary to dispose of all remaining issues.

¶40. Two years after sustaining life-altering injuries, Grantham filed yet another Motion to Compel Medical Treatment on November, 17, 2017, pleading that no agreement about specific modifications identified by the neutral case manager had been reached. Grantham requested that the Commission address the following issues—1) replacing a metal ramp off the dining area with a wider concrete ramp; 2) lowering the kitchen sink to allow Grantham to roll her wheelchair underneath; 3) adding a kitchen work island; 4) widening the hallway to allow her to freely turn her wheelchair into the bathroom; 5) enlarging a bedroom closet to allow for the installation of lower rods and shelves; 6) installing a new exit on the bedroom side of the home because the other exits are both on the other end of the home; 7)

22

repairing other areas damaged by the contractor hired by the Employer/Carrier; 8) repairing the plumbing, air conditioning, and heating systems. Grantham averred that her requests were necessary for her health and well-being due to her medical conditions.

¶41. After two years of Grantham's living in unaccommodating and unsafe surroundings, on December 15, 2017, the AJ entered another order finding that the Employer/Carrier should—1) provide a suitable surface to the bottom of the existing ramp to enable Grantham to travel to the front of her home; 2) lower clothing rods in the closet and evaluate whether the closet could be modified to accommodate the wheelchair; 3) add a wheelchair-accessible exit from the bedroom; 4) authorize the repairs for the damage caused by the contractors; 5) consult with the neutral case manager about Grantham's ability to enter the bathroom and the possibility of modifications to the door; 6) obtain a report regarding the operating problems, if any, of the septic, heating, and cooling systems; and 7) add lever-type faucets to the kitchen sink. The AJ held the alterations of the sink and the installation of the island in abeyance, pending additional information from the neutral case manager.

¶42. Eight months after that order was entered, another motion was filed on Grantham's behalf. Pursuant to the December 2017 order, reports were obtained regarding Grantham's septic and HVAC systems. The reports indicated that the septic system was not working and the HVAC required replacement. However, the Employer/Carrier refused to provide or authorize any repair to the systems, leaving Grantham, a vulnerable paraplegic, to live in unsafe and unsanitary conditions.

¶43. In response, the Employer/Carrier argued that the problems with the septic and HVAC

23

systems began long before Grantham's accident and were not related to her injury. The Employer/Carrier argued it was not responsible for any cure. A hearing was scheduled for September 21, 2018.

¶44. Grantham amended her motion to address a repair needed for her handicapped-accessible van.

> The repair estimate provided to the carrier clearly shows that the drive unit for the passenger power slide door requires replacement. Such a repair is not legitimately or even arguably "regular maintenance and gasoline" and therefore not the claimant's responsibility. The employer and carrier are aware that the claimant is suffering with this transportation issue and the other issues identified herein but have steadfastly refused to provide any repairs, thereby necessitating this motion to compel and associated delay.

The Employer/Carrier responded that Grantham, as the owner of the van, was responsible for its maintenance.

¶45. Almost three years after her accident, on September 24, 2018, the AJ determined that the power slide door of the handicapped-accessible vehicle was a "major mechanical breakdown of the vehicle" and was not "regular maintenance." The Employer/Carrier was ordered to pay for the repair. The motion to compel home modifications was held in abeyance until the AJ could conference with the case manager.

¶46. After conferencing with the case manager, the AJ entered another order appointing the case manager to resume her duties and expanding her role beyond the limited services provided pursuant to the June 2017 order. Nurse Oltremari was ordered to provide medical management services which included a home inspection to determine if Grantham's home was "reasonable and adequate for her health and safety." Oltremari was ordered to coordinate

24

with Grantham's medical providers to ensure Grantham was receiving the care required by the nature of her injury and the process of her recovery. Finally, Oltremari was ordered to ensure the Employer/Carrier was provided with all of the documentation and records needed to timely pay Grantham's medical providers.

¶47. On November 6, 2018, the AJ conducted a hearing on Grantham's Amended Motion to Compel[10] and entered an order on November 16, 2018. After considering the reports of the neutral case manager and occupational therapist, the AJ conducted a personal inspection of Grantham's home. After that, the AJ granted Grantham's motion as to the specific home repairs and modifications recommended by the nurse manager and the occupational therapist. The AJ alternatively found that the Employer/Carrier could forgo those modifications to the existing structure by providing Grantham with a new and/or remodeled home that was handicapped accessible and comparable to her current dwelling in terms of size and location.

¶48. The Employer/Carrier petitioned the Commission to overrule certain findings in the November 16, 2018 order—1) replace and/or repair the septic, heating, and cooling systems; 2) enlarge the bedroom and/or add another bathroom; 3) add a third exit from the home; and 4) expand and/or remodel the kitchen. The Employer/Carrier argued that the AJ erred by ordering The Employer/Carrier to provide modifications for which it was not responsible.

¶49. Grantham responded with a letter brief to the Commission. Grantham set forth that many issues had been pending since at least July 2017 and that the Employer/Carrier had failed at every stage to offer any lay or medical opinions that the recommended repairs

_____

[10] The record does not contain a transcript of that hearing, only a list of exhibits offered.

ordered to be performed were not medically necessary.

> *The motivations of the employer and carrier currently and as described herein are difficult to fathom.* The admittedly compensable nature of Ms. Grantham's *accident and the catastrophic nature of her injury are not disputed.* The medical necessity of the relief the claimant has repeatedly been forced to obtain only through litigation has *never been challenged* by any medical witness offered by the employer and carrier. The employer and carrier have repeatedly refused to provide *recommended and necessary medical treatment,* services, and supplies claiming that it is "not their responsibility." To treat a paralyzed worker in this fashion is *unjustified.* More relevant to the instant proceeding, the employer and carrier's actions are *legally unsupported.* The employer and carrier's decisions have repeatedly caused *inexcusable delays* and imparted daily misery upon Ms. Grantham. At the time of oral argument, Ms. Grantham has been living in the unsafe and unhealthy conditions that all of the medical professionals have advised against for **582** days since the nurse appointed by the Commission first raised the issues.

(Emphasis added.)

¶50.    After a hearing, the Commission unanimously found that the Employer/Carrier had instituted an appeal "without a medical opinion or credible evidence to support their arguments [and] without reasonable grounds thus causing unreasonable delay." Grantham presented two medical opinions as well as the opinion of Nurse Oltemari, the appointed independent nurse case manager, that the recommended repairs were related to her condition and that her living situation was unsuitable and unsafe for a paraplegic person. The Employer/Carrier offered not one iota of medical evidence to contest the evidence presented by the paraplegic injured worker. The Commission awarded attorneys' fees in the amount of $4,000, finding

> that the Employer/Carrier instituting an appeal to the Full Commission without a medical opinion or credible evidence to support their arguments constitutes an appeal without reasonable grounds thus causing unreasonable delay. The Mississippi Supreme Court has held "***Spann*** stands for the proposition that if

all physicians agree that a certain medical treatment would benefit the employee and there is no credible evidence to the contrary, the Commission is then obligated to authorize the treatment." ***Hardaway Co. v. Bradley***, 887 So. 2d 793 (Miss. 2004) (referencing ***Spann v. Wal-mart Stores, Inc.***, 700 So. 2d 308 (Miss. 1997). Claimant has presented two physicians' opinions that her septic system and HVAC need to be repaired and/or replaced due to her injury. Further, the independent nurse case manager and occupational therapist recommended the same. The Commission has affirmed the Order of Administrative Judge dated November 16, 2018, in a separate Order as there was no credible evidence presented to the contrary.

Therefore, the Commission finds pursuant to its authority in Miss. Code Ann.§ 71-3-59 that the Employer/Carrier shall pay reasonable attorney's fees in the amount of $200.00 per hour for a total of 20 hours as a result of instituting an appeal without reasonable grounds and causing unnecessary delay in this matter.

¶51. Three years, seven months, and ten days after its employee was rendered a paraplegic in a work-related accident, the Employer/Carrier filed its notice of appeal. The case was assigned to the Court of Appeals. Three and a half months later, Grantham no longer needed the begged-of modifications; she had died. Following her death, the estate moved for substitution under Rule 25(a)(1) of the Mississippi Rules of Civil Procedure and Rule 43(a) of the Mississippi Rules of Appellate Procedure. The Court of Appeals correctly granted the motion.

***Analysis***

¶52. At the time of issuance of every order, the AJ and Workers' Compensation Commission entered legally valid orders. These orders compelled the Employer/Carrier to perform some modifications on Grantham's residence and to provide and partially insure and maintain a handicapped-accessible van. In a separate order, the Commission sanctioned the Employer/Carrier in the amount of $4,000. There is no disagreement among the parties, the

27

judges of the Court of Appeals, or the members of this Court that the Employer/Carrier is no longer obligated to modify the deceased's home or insure and maintain the deceased's handicapped-accessible van, for those obligations were rendered moot upon her death. However, the order imposing sanctions was not mooted, thus it is reviewable.

¶53. "Our standard of review in workers' compensation cases is limited to determining whether the Commission's decision was supported by substantial evidence, was arbitrary and/or capricious, was beyond the Commission's authority to make, or whether a claimant's constitutional or statutory rights were violated." *Ladner v. Zachry Constr.*, 130 So. 3d 1085, 1088 (Miss. 2014) (citing *Gregg v. Natchez Trace Elec. Power Ass'n*, 64 So. 3d 473, 475 (Miss. 2011)). "The standard of review utilized by this Court when considering an appeal of a decision of the Workers' Compensation Commission is well settled: '[t]he findings and order of the Workers' Compensation Commission are binding on this Court so long as they are "supported by substantial evidence."'" *Harper ex rel. Harper v. Banks, Finley, White & Co. of Miss., P.C.*, 167 So. 3d 1155, 1162 (Miss. 2015) (quoting *Vance v. Twin River Homes, Inc.*, 641 So. 2d 1176, 1180 (Miss. 1994)). "We are bound to the Workers' Compensation Commission's findings of fact even though the evidence would convince us otherwise if we were the ultimate fact finder." *Id.* (citing *Barnes v. Jones Lumber Co.*, 637 So. 2d 867, 869 (Miss. 1994)).

¶54. Disagreement arises with the reversal of the Commission's sanctions award. The Employer/Carrier contested Grantham's pursuit of her claims at every stage of the proceedings. The Commission was not presented with an iota of contrary medical evidence

that the needed repairs and modifications repeatedly sought by Grantham were not related to her catastrophic, work-related injury nor that her living conditions at the time, absent modifications, were suitable for a paraplegic person. "[T]his Court will reverse the Commission's order only if it finds that order clearly erroneous and contrary to the overwhelming weight of the evidence." *Fought v. Stuart C. Irby Co.*, 523 So. 2d 314, 317 (Miss. 1988) (citing *Myles v. Rockwell Int'l*, 445 So. 2d 528, 536 (Miss. 1983)). In today's case, the Employer/Carrier offered no evidence. The Commission was within its authority to award sanctions. Today's case is one of first impression, as no member of this Court has been called upon to review a unanimous Commission's order imposing sanctions on an Employer/Carrier. I would affirm the Commission's award of sanctions, as it is amply supported by the record.

¶55. Disagreement further lies with the Court of Appeals' and the majority's failure to recognize and apply Rule 43 of the Mississippi Rules of Appellate Procedure and Mississippi precedent. Likewise, in a case of first impression, the Court of Appeals carved out a new procedural rule in adopting federal case law on vacatur, and the majority joins this departure from Mississippi rules and case law. Both use this newly adopted procedural rule in a piecemeal, haphazard manner, applying it as to only some issues of a case rightfully pending on appeal. I not only disagree with the adoption of a new procedure, but I also disagree with its demonstrably erroneous use in this case. A dismissal for mootness of the orders obligating the Employer/Carrier to pay for repairs and modifications to the dwelling and to insure and maintain the van would comport with our existing law, without federalizing our state court

29

rules and procedures.

¶56.  With all due respect to the Commission, I would affirm.

### *Sanctions*

¶57.  The Commission found that the Employer/Carrier had instituted an appeal to it "without a medical opinion or credible evidence to support their arguments [and] without reasonable grounds thus causing unreasonable delay."

> The Workers' Compensation Commission is the trier and finder of facts in a compensation claim, the findings of the Administrative Law Judge to the contrary notwithstanding. *See* Dunn, *Mississippi Workers' Compensation* § 284 (3d ed. 1982). If the Commission's findings of fact and order are supported by substantial evidence, *all appellate courts are bound thereby*. ***Champion Cable Const. Co., Inc. v. Monts***, 511 So. 2d 924, 927 (Miss. 1987); ***Penrod Drilling Co. v. Etheridge***, 487 So. 2d 1330, 1332 (Miss. 1986); ***Georgia–Pacific Corp. v. Veal***, 484 So. 2d 1025, 1027 (Miss. 1986) (and cases cited therein); and ***Evans v. Marko Planning, Inc.***, 447 So. 2d 130, 132 (Miss. 1984) (and cases cited therein); *see* also Dunn, *Mississippi Workers' Compensation* §§ 286, 288 (3d ed. 1982). This is so, even though the evidence would convince this Court otherwise, were we the fact finder. ***Georgia–Pacific Corp.***, 484 So. 2d at 1028 (quoting ***Olen Burrage Trucking Co. v. Chandler***, 475 So. 2d 437, 439 (Miss. 1985)). Stated differently, this Court will reverse the Commission's order only if it finds that order clearly erroneous and contrary to the overwhelming weight of the evidence. ***Myles v. Rockwell International***, 445 So. 2d 528, 536 (Miss. 1983) (citing ***Masonite Corp. v. Fields***, 229 Miss. 524, 91 So. 2d 282 (Miss. 1956)); and ***Riverside of Marks v. Russell***, 324 So. 2d 759, 762 (Miss. 1975).

*Fought*, 523 So. 2d at 317 (emphasis added).

> And a finding is clearly erroneous when, although there is some slight evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made by the Commission in its findings of fact and in its application of the Act.

***Evans v. Cont'l Grain Co.***, 372 So. 2d 265, 269 (Miss. 1979) (quoting ***Cent. Elec. Power Ass'n v. Hicks***, 236 Miss. 378, 110 So. 2d 351 (1959)).

¶58. The Commission relied on two cases from this very Court in formulating its opinion—*Hardaway*, 887 So. 2d at 795, and *Spann*, 700 So. 2d at 314. The *Spann* Court found that, of all of the medical evidence in the record presented by both parties, no evidence supported the conclusion of maximum medical improvement . *Id.* at 312. That case was remanded to the Commission "for a determination of whether or not maximum medical improvement has been achieved, and if so, whether there exists some temporary or permanent partial disability." *Spann*, 700 So. 2d at 313.

¶59. In *Hardaway*, the ALJ and Commission found that Bradley did not need surgery for his work-related injury. *Hardaway*, 887 So. 2d at 794. That decision was reversed by the circuit court, and the Court of Appeals affirmed the circuit court's reversal. *Id.*

¶60. On certiorari review, this Court found that the Commission was presented with conflicting medical opinions. *Id.* at 795. The Commission then based its findings on "the opinions of two competent doctors and on the findings of various medical tests and procedures." *Id.* at 797. This Court agreed with Judge Griffis's dissenting opinion in the Court of Appeals:

> that, "here, with the testimony of two physicians, who conducted independent medical examinations, the Commission's decision was supported by more than a scintilla of evidence. Therefore, 'substantial evidence' supporting the Commission's decision was present." *Hardaway Co. v. Bradley*, 881 So. 2d [241,] 247 [(Miss. Ct. App. 2003)] (Griffis, J., dissenting), [*rev'd by Hardaway*, 887 So. 2d 793].

*Hardaway*, 887 So. 2d at 796. The Court appropriately reversed the decision of the Court of Appeals and reinstated the Commission's decision. *Id.* at 797.

¶61. "If the Commission's finding of fact and order are supported by substantial evidence,

then we are bound by them even though we as fact finder would have been convinced otherwise." **Spann**, 700 So. 2d at 311 (citing **Fought**, 523 So. 2d at 317). In **Spann** and **Hardaway**, the Commission was presented with medical evidence from both parties in support of their arguments. Today's case differs. While Grantham presented substantial medical evidence to support her claim, the record lacks *any* medical evidence to support the Employer/Carrier's actions.

¶62.    Grantham presented two medical opinions, in addition to the original IME, an opinion of Nurse Oltemari, an independently appointed nurse case manager, *inter alia*, that Grantham needed repairs and modifications (which were occasioned by her work-related injury) and that her living situation at the time was unsuitable and unsafe for a paraplegic person. It is no surprise that the Commission found that the Employer/Carrier's appeal was totally absent of supporting medical evidence, constituted an appeal without reasonable grounds, and was just another tactic of delay. The Employer/Carrier offered not one iota of medical evidence to contest the evidence presented by the paraplegic injured worker.

¶63.    As the Commission's order shows, Grantham "presented two medical opinions as well as the opinion of Nurse Oltemari, independent nurse case manager[,] that the Claimant's needs for septic system repair and HVAC repair are related to her injury as her current living situation is not suitable nor safe for a paraplegic person." One of those medical opinions was from a physiatrist, who, during his deposition, testified that it was medically necessary for Grantham to be provided the home modifications, *i.e.*, septic and HVAC systems. He also said that people with Grantham's condition have issues regulating their body temperature and

32

"that certainly puts her at higher risk medically for having issues with temperature." He explained that patients with spinal cord injuries are immunocompromised and are at high risk for infections. The doctor further stated clearly that functioning septic and HVAC systems are medically necessary due to "[Grantham's] immunocompromised state from her cord injury and her diminished thermoregulation capabilities." The other medical opinion offered by Grantham was from Suzanne Colbert, an occupational therapist, who opined that the septic and HVAC systems were medical necessities for Grantham. She explained that Grantham's condition caused her to suffer from "abnormal body temperature" that "could lead to skin breakdown and illness" and that a new HVAC system would help regulate Grantham's body temperature. She explained also that "Grantham's decreased mobility, decreased sensation and lack of control of bowel/bladder management rendered a working septic system to be medically necessary." Grantham presented compelling medical evidence that she needed home modifications that were medically necessary because of her condition.

¶64.    Section 71-3-15 of the workers' compensation law reads that "[t]he employer shall furnish such medical, surgical, and other attendance or treatment, nurse and hospital service, medicine, crutches, artificial members, and other apparatus for such period as the nature of the injury or the process of recovery may require." Miss. Code Ann. § 71-3-15(1) (Rev. 2021). When this law was first adopted and for many years thereafter, this Court held that "the act should be liberally construed to carry out its *beneficent remedial purpose*[.]" ***Stuart's Inc. v. Brown***, 543 So. 2d 649, 652 (Miss. 1989) (emphasis added) (citing ***Pontotoc Wire Prods. Co. v. Ferguson***, 384 So.2d 601, 603 (Miss.1980)).

¶65.    As the ***Spann*** Court noted:

> In ***White v. Hattiesburg Cable Co.***, 590 So. 2d 867 (Miss. 1991), this Court cited Dunn *Mississippi Workers' Compensation*, § 340 (3rd ed. 1982):
>
>> **§ 340 Generally**. The injured employee is entitled to medical and hospital care without limit, but the fees and other charges are subject to regulation by the commission and may not exceed those which prevail in the same community. . . . Medical benefits include *surgical treatment*, nursing, hospital service, medicine, crutches, artificial members and other apparatus.
>>
>> The purpose of unlimited services is to insure restoration of the employee to the maximum usefulness that he can attain under the physical impairment resulting from the injury, and the services are in addition to all other compensation benefits, and this is the established yardstick by which benefits are to be measured.
>>
>> In this field, liberality is especially notable and, in practical effect, it is *the obligation of the employer to provide whatever is needed or is reasonably calculated to carry out the humanitarian purposes of the Act.* (Footnote omitted; emphasis added).
>
> ***White***, 590 So. 2d at 869-70.
>
> This Court went on to hold:
>
>> There is a broad public policy behind the Act to provide the necessary treatment to restore the injured worker to health and productivity. This should be the focus of the Commission. Was this treatment necessary? Are the charges reasonable? These questions should be thoroughly investigated . . . .
>
> ***Id.*** at 870.
>
> And finally, in ***Oswalt v. Abernathy & Clark***, 625 So. 2d 770 (Miss. 1993), this Court denied payment for a procedure that was controversial because it was considered unreliable and not indicated by Oswalt's type of injury. However, we reversed the Commission's refusal to pay for treatment that was "reasonable and necessary."

*Spann*, 700 So. 2d at 314-15.

¶66.    In an attempt to balance the administration of workers' compensation law, in 2012, the Legislature amended the law to put workers and employers on equal footing. The Legislature also mandated that the law "be fairly and impartially construed" and "applied according to the law and the evidence in the record . . . ." Miss. Code Ann. § 71-3-1(1) (Rev. 2021). Following that mandate, the result is no different. The stated purpose of the law is

> *to pay timely* temporary and permanent disability benefits to every worker who legitimately suffers a work-related injury or occupational disease arising out of and in the course of his employment, *to pay reasonable and necessary medical expenses* resulting from the work-related injury or occupational disease, and to encourage the return to work of the worker.

Miss. Code. Ann. § 71-3-1(3) (Rev. 2021) (emphasis added). There is not one semblance of evidence in the record to support an opinion that the Employer/Carrier's argument had a colorable basis in the law.

¶67.    The Commission, as the trier of fact, is tasked with the responsibility of "determin[ing] which evidence is credible, has weight, and which is not." *Oswalt*, 625 So. 2d at 772 (internal quotation mark omitted) (quoting *Metal Trims Indus., Inc. v. Stovall*, 562 So. 2d 1293, 1297 (Miss. 1990)). Appellate courts must not "impermissibly substitute[] their opinions for that of the Commission." *Raytheon Aerospace Support Servs. v. Miller*, 861 So. 2d 330, 333 (Miss. 2003). The Commission affirmed the AJ's finding that Grantham's medical requests were all necessary and reasonable under the workers' compensation law. The Commission also found that sanctions in the form of attorneys' fees were warranted. Those findings were supported by substantial evidence, and this Court is bound by the

Commission's decision absent a finding that the decision was clearly erroneous.

¶68. In today's case, both the Court of Appeals and the majority formulate opinions contrary to the Commission's decision. The evidence supporting the Commission's findings include the opinions of two doctors, an IME, a neutral nurse case manager, an occupational therapist, and the AJ after a site visit to Grantham's home, *inter alia*. The Employer/Carrier's incessant delays in contesting or failing to comply with these valid orders frustrated Grantham from living in a safe, sanitary, and accessible abode the last four years of her life. The Employer/Carrier presented not one scintilla of medical evidence to refute Grantham's claims or to support its own arguments. The review of the Commission was yet another delay as Grantham sought relief. The review was without reasonable grounds and caused an additional delay. Courts do not own the concept of "justice delayed is justice denied." We must continue to remind ourselves, as well as the trial courts, of our Constitutional duty to ensure that all persons "shall have remedy by due course of law, and right and justice shall be administered without sale, denial, or *delay*." Miss. Const. art. 3, § 24 (emphasis added).

¶69. Substantial evidence supports the findings of the Commission. Thus, I would reverse the judgment of the Court of Appeals and reinstate the decision of the Commission.

### *Federal Vacatur Law*

¶70. "If a judgment has become moot [while awaiting review], [the United States Supreme] Court may not consider its merits, but may make such disposition of the *whole case* as justice may require." *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 21-22, 115 S. Ct. 386, 130 L. Ed. 2d 233 (1994) (first alteration in original) (emphasis added) (internal

quotation marks omitted) (quoting ***Walling v. James V. Reuter, Inc.***, 321 U.S. 671, 677, 64 S. Ct. 826, 829, 88 L. Ed. 1001 (1944)). "It is petitioner's burden, as the party seeking relief from the status quo of the appellate judgment, to demonstrate not merely equivalent responsibility for the mootness, but *equitable entitlement* to the *extraordinary* remedy of vacatur." ***Id.*** at 26 (emphasis added).

¶71.   Vacatur is an *extraordinary remedy* that has no place in today's case. In this issue of first impression, neither the Court of Appeals nor the majority includes in its opinions a factual basis to support bestowing equitable entitlement on the Employer/Carrier. The issue of vacatur is before today's Court is because the Court of Appeals injected it into this proceeding by requesting briefing on a point never raised by the Employer/Carrier.

¶72.   A proper notice of appeal was filed on June 6, 2019. Sharon Grantham died on September 25, 2019. Following Mississippi's existing and proper legal procedure as set forth in the Mississippi Rules of Appellate Procedure, a suggestion of death was filed by her estate, and the estate moved to be substituted. *See* M.R.A.P. 43. The Employer/Carrier filed no objection to the substitution. The Court of Appeals granted the estate's motion to substitute. For reasons unstated, the Court of Appeals *sua sponte* issued an order requiring supplemental briefing. The order required the parties to respond to the following questions:

1.   How does the claimant's death affect the viability of the issues on appeal?

2.   Would a ruling on any particular issue result in an improper advisory opinion due to the claimant's death?

3.   Should any of the Commission's orders be *vacated as moot* in light of the claimant's death?

Order, ***Gamma Healthcare Inc. v. Est. of Grantham***, No. 2019-WC-00913-COA (Miss. Ct. App. Mar. 18, 2020) (emphasis added). The Court of Appeals never asked the parties to address the federal vacatur rule, adoption of the federal vacatur rule, or the application of the federal vacatur rule to this case. The Court of Appeals only requested briefing on whether the orders should be "vacated *as moot*," which our rules already address. ***Id.*** (emphasis added).

¶73. In its supplemental briefing, the Employer/Carrier urged that all orders should either be vacated in their *entirety* or reviewed in their *entirety*. Grantham urged that none of the orders should be vacated because they were valid orders obtained through litigation of issues not moot when decided. ***Neither party moved for vacatur nor mentioned federal vacatur***. After the order requiring supplemental briefing was issued, neither party filed a motion to vacate the Commission's orders. Judges and Justices are not to advocate positions taken by either party in the cases before them. Today's extraordinary remedy was never requested, and the Employer/Carriers is not equitably entitled. *See supra* ¶¶ 33-51.

### *Mississippi Vacatur Law*

¶74. As pointed out by both the Court of Appeals and the majority, little Mississippi precedent exists on vacatur. There is *no* precedent for piecemeal vacatur of orders. Vacating an order abrogates, voids, annuls the order, causing the same to disappear as if it never existed. Mississippi law contemplated the dismissal of moot issues. Yet no decisions, until today, permits this High Court of Errors and Appeals[11] to annul an order that was valid when

---

[11] *See **Dismukes v. Stokes***, 41 Miss. 430 (1867) (this Court was originally known as the "High Court of Errors and Appeals of Mississippi").

entered, without finding error.

¶75.    In ***Fails v. Jefferson Davis County Public School Board***, 95 So. 3d 1223, 1224 (Miss. 2012), this Court, in an appeal authored by today's majority writer, dismissed an appeal on certiorari and vacated the decisions of the Court of Appeals and the circuit court, finding those two courts erred by exercising jurisdiction over an appeal that consisted of issues that were moot even prior to the filing of the complaint, a nullity. In 2003, the Failses, residents of Jefferson Davis County, petitioned the Jefferson Davis County School Board to allow their daughter to transfer to the Lamar County School District. ***Id.*** Both districts approved, and their daughter began attending school in Lamar County. ***Id.*** Several years later, the Jefferson Davis County School Board adopted a policy prohibiting such transfers and revoked the Failses' prior transfer. ***Id.*** The circuit court and Court of Appeals affirmed the school board's revocation, and the Failses filed a petition for certiorari. ***Id.*** at 1225. In their petition, the Failses represented that they had moved to Lamar County in 2008, one month prior to filing their complaint in the circuit court. ***Id.***

¶76.    The ***Fails*** Court reiterated that:

> "[A] case is moot so long as a judgment on the merits, if rendered, would be of no practical benefit to the plaintiff or detriment to the defendant." ***Gartrell v. Gartrell***, 936 So. 2d 915, 916 (Miss. 2006). This Court has no authority to "entertain an appeal where there is no actual controversy." ***Id.*** (citing ***McDaniel v. Hurt***, 92 Miss. 197, 41 So. 381 (1907)). "Cases in which an actual controversy existed at trial but the controversy has expired at the time of review, become moot. We have held that the review procedure should not be allowed for the purpose of settling abstract or academic questions, and that we have no power to issue advisory opinions." ***Allred v. Webb***, 641 So. 2d 1218, 1220 (Miss. 1994) (quoting ***Monaghan v. Blue Bell, Inc.***, 393 So. 2d 466, 466-67 (Miss. 1980)).

*Fails*, 95 So. 3d at 1225. The Court dismissed the appeal, finding that

> both the circuit court and the Court of Appeals had before them moot issues and thus, no case or controversy, given that the issues raised by the Failses were moot upon their obtaining Lamar County residency, prior to the filing of their complaint in circuit court. As such, the lower courts had no authority to decide the substantive merits of the issues presented. *See Allred*, 641 So. 2d at 1220. Therefore, we vacate the decisions of the circuit court and the Court of Appeals.

*Fails*, 95 So. 3d at 1226. Thus, the orders were vacated because of error. *Id.*

¶77.    At the time today's case was presented to the Commission and appealed to the Court of Appeals, the issues for review were not moot, and each decision maker had authority to decide those issues. Later, the parties agreed that certain issues, but not all, were mooted by Grantham's early death. However, her estate was substituted by order of the Court of Appeals, leaving the remaining issue of whether the Commission's ordered sanctions were appropriate.

¶78.    *Fails* is directly on point. No case law or authority under Mississippi law allows vacating the orders of the AJ or the Commission, given the posture of today's proceedings. It is neither necessary nor proper to create a new procedural law (federal vacatur). It is long-standing and well-settled law that workers' compensation is a creature of our state's legislative body. *See L. & A. Const. Co. v. McCharen*, 198 So. 2d 240, 242 (Miss. 1967). Federal-appellate-court-made law regarding vacatur has no place in today's case. The Employer/Carrier was neither entitled to, nor did it seek, the extraordinary remedy of vacatur.

¶79.    Today's departure from Mississippi rules and procedures firmly in place to address when a party dies after a notice of appeal is filed is a departure from our role as the High

40

Court of Errors and Appeals. *See **Dismukes***, 41 Miss. 430. This newly adopted procedure of the majority allows for the vacatur of a valid order without a finding of any error. Such a result is not supported by our case law or procedural rule, nor should such an extraordinary remedy requiring equitable entitlement be applied when no facts support such treatment and neither party prayed for vacatur.

**COLEMAN, ISHEE AND GRIFFIS, JJ., JOIN THIS OPINION.**